**CLEAR FORK COAL COMPANY,**
Appellant,

v.

Joe Hubert GAYLOR and Kentucky Workmen's Compensation Board, Composed of Allen P. Cubbage, Paul E. Hayes and J. J. Tye, Appellees.

Court of Appeals of Kentucky.

Jan. 27, 1956.

James Sampson, William A. Rice, Harlan, for appellant.

Doyle B. Inman, Middlesboro, for appellees.

STEWART, Judge.

This is an appeal from the judgment of the Bell Circuit Court affirming an order of the Kentucky Workmen's Compensation Board awarding Joe Hubert Gaylor compensation against Clear Fork Coal Company. The company will be referred to as "appellant", Joe Hubert Gaylor as "appellee", and Workmen's Compensation Board as "Board."

On October 18, 1951, while employed as a coal loader in appellant's mine, appellee suffered an injury when helping to lift a derailed mine car onto its track. He testified "a pain hit me in the back of my left leg," and this condition, he maintained, persisted and afterwards spread to his back. About three weeks after the date he indicated he was injured he returned to the mine and worked approximately a month. His pain did not lessen during this period, so he consulted two doctors in Middlesboro who examined him and later referred him to Doctor M. Frank Turney, a bone specialist in Knoxville, Tennessee. Doctor Turney operated on appellee for a herniated disc on January 14, 1952, and released him from the hospital thirteen days later. This physician thought he was then sufficiently recovered to resume his former occupation.

Appellant, believing appellee had not received a traumatic injury, denied him compensation benefits, and, on or about May 30, 1952, appellee filed his application with the Board. The case proceeded to trial with the result that appellee was awarded payments for temporary total disability from the date of his injury until July 28, 1952, a period of 40⅞ weeks.

On June 8, 1953, appellee filed notice of his intention to reopen the award, under the provisions of KRS 342.125, claiming a change of condition. He alleged his situation as to whether he had sustained a permanent disability could not be determined at the time of the original hearing because no pertinent evidence was available on the subject; however, he averred he has since been examined by a physician who has found him to have a residual permanent

disability. A motion was accordingly made for additional compensation, but the Board overruled this motion because it was not accompanied by the affidavit of a physician.

On September 1, 1953, a second motion of the same tenor was filed supported by the affidavit of Doctor Robert F. Patterson, Jr., an orthopedic surgeon of Knoxville, Tennessee. The Board sustained this motion over appellant's objection and set the application down for a hearing. The proof was by depositions and on April 6, 1954, the referee awarded appellee benefits for 30% permanent partial disability at the rate of $6.30 per week for 408⅞ weeks, beginning July 29, 1952, together with 6% interest on all installments falling due after September 1, 1953. Upon an application for review the full Board upheld the award of the referee.

Appellant urges two grounds for reversal. First, it contends there was no showing of a change of condition required under KRS 342.125 to reopen the previous award. Secondly, it asserts the overruling of the first motion to reopen the award was res judicata and a bar to a later reopening of the case on the same ground.

Under KRS 342.125 the Board on its own motion or on that of an interested party, upon proof of change of condition, mistake or fraud, may at any time review an award, and end, diminish or increase the compensation previously awarded within the applicable limits prescribed by law. Such review shall be had upon notice to the parties interested and shall not affect a previous award as to any sums already paid thereunder.

■ The Board, in making the original award, found as a fact from the evidence then before it that appellee had regained his well-being to the extent that he could do the work he was previously fitted to perform. The problem posed here is whether there was actually any disablement after July 28, 1952, developing out of or as a result of the injury received on October 18, 1951. In this connection the Board considered the affidavit of Doctor Patterson,

the testimony of appellee, the deposition of Doctor Ralph J. Angelucci, a neuro-surgeon of Lexington, and the records of the former hearing on the original claim. Under the governing statute the Board has large discretion in determining whether a case shall be reopened, and it may re-examine the record of a former hearing with reference to a reconsideration of the same accident. See W. E. Caldwell Co. v. Borders, 301 Ky. 843, 193 S.W.2d 453.

Appellee testified generally that his back was not well of its infirmity and had given him trouble all the time since he was injured. He had attempted to do manual labor on various occasions but the pain in his back recurred when he exerted himself. He was asked how his back had affected him after the operation and up to the present. He answered: "Well, just as long as I take care of myself and just lay around, don't do too much walking, overdo myself, I can make it all right."

Doctor Patterson, who gave his deposition at the hearing in appellee's behalf, stated he had examined and treated appellee at intervals during five months in 1953. According to him, appellee was found to have muscle spasm in the lumbar region of his back, the jerk was absent in appellee's left ankle and there was in his right leg a diminution of the knee jerk. He believed all this was caused by a permanent damage to the nerve root in the lower part of the back at the site appellee had been operated upon by Doctor Turney. It was his opinion appellee would have chronic backache. To alleviate this, he recommended a back brace for appellee and he was fitted for one on April 27, 1953. It was this physician's view that as of the time of his examination on April 27, 1953, appellee had about 30% permanent partial disability.

Doctor Angelucci, appearing as a witness for appellant, testified appellee was sent to him in May of 1952 and in November of 1953, and his neurological examination revealed nothing except the following objective findings, and we quote this description of appellee's condition from this physician's deposition: "Slight tightening

of the lower back, absent left ankle jerk and hyperesthesia over the left lateral foot. X-ray of the lumbosacral region only revealed a narrowing of the lumbosacral interspace." His first and last examinations disclosed essentially the same diagnosis. Doctor Angelucci's was the only testimony appellant introduced at the reopening hearing.

Upon the basis of this evidence the Board concluded there had been a worsening of appellee's physical status within the purview of KRS 342.125, which justified a reopening and modification of the award. Appellee was permanently and partially disabled, the Board held, to the extent of 30% as a consequence of his injury on October 18, 1951, and this was the foundation for the additional award.

█ In compensation cases, the sole function of courts, so far as questions of fact are concerned, is to determine whether the record contains sufficient competent testimony of probative value upon which the findings of fact of the Board may be supported. See Blue Diamond Coal Co. v. Johnson, 314 Ky. 614, 236 S.W.2d 710; McDonald v. American Radiator & Standard San. Corp., Ky., 237 S.W.2d 849.

█ Certainly it cannot be said that there was no substantial evidence of probative value to support the Board's findings of fact. The Board reasoned that, since it had formerly held appellee had reached maximum recovery and was able to do his customary work on July 28, 1952, any evidence introduced on the reopening of this case which might reveal he was in fact permanently disabled in any degree thereafter would tend to substantiate appellee's contention that there had been a change of condition. In our opinion, the Board correctly ruled it had authority to reopen this case and grant appellee additional compensation. We believe permanence of a cause inducing disability is of itself in the nature of a change, if it was assumed at the original hearing of a claimant's application that the nature of the disability was only temporarily total.

As a second argument for reversal, appellant contends that a dismissal of the first motion to reopen was res judicata to the filing of the second motion on the same grounds. The cases of Kentucky Wagon Mfg. Co. v. Esters, 221 Ky. 63, 297 S.W. 811, and Happy Coal Co. v. Hartbarger, 251 Ky. 779, 65 S.W.2d 977, are relied upon to support this position. Those opinions held that successive motions to reopen upon the same grounds are not permitted where there was an order overruling the first motion after a hearing upon the merits. However, in Byrne & Speed Coal Corp. v. Dodson, 263 Ky. 848, 94 S.W.2d 24, it was held that the doctrine of res judicata has no application where there was not an examination of the merits of the claim upon the first motion but only an adjudication of a technical insufficiency. See also Hysteam Coal Corp. v. Ingram, 283 Ky. 411, 141 S. W.2d 570.

█ The record here clearly shows that appellee's first motion to reopen was overruled solely because he failed to file a supporting affidavit. The merits of his claim of permanent disability were not even considered by the Board at that time; therefore, under the authority of the Dodson and Ingram cases, the dismissal of the first motion is not a bar to the second. Such action by the Board could not be res judicata on an issue which was never even considered, much less passed upon. We conclude appellee was entitled to his day in court on the merits of his motion to reopen.

Wherefore, the judgment is affirmed.