**Ernest SEXTON et al., etc., Appellants,**

v.

**BLACK STAR COAL CORPORATION, Appellee.**

Court of Appeals of Kentucky.

Dec. 7, 1956.

Doyle B. Inman, Middlesboro, for appellants.

Logan E. Patterson, James S. Wilson, Pineville, for appellee.

STEWART, Judge.

Ernest Sexton, age 36, prosecutes this appeal from the judgment of the Harlan Circuit Court which set aside an award of the Workmen's Compensation Board on the ground that he had failed to give timely notice of his alleged accident and injury to his employer, Black Star Coal Corporation.

Sexton claimed he was injured the night of August 5, 1953, in his employer's mine while he and a fellow workman, Joe Lee, were lifting a timber weighing about 150 pounds, preparatory to setting it in place against the roof of the mine. He described the occurrence in these words: "It seemed like something slipped in my back and it was burning and stinging." Sexton continued working until the end of the shift at 11:30 o'clock that night and then rode in an automobile with other employees of the mine to his home at Barbourville, some 50 miles from his place of employment. He made no formal complaint before leaving the mine, but his back "kept getting worse" and he spoke of his pain to others, according to his testimony.

On the next day he took to his bed where he remained until three days later when he was removed to the Knox Hospital in Barbourville where he was treated by Dr. C. R. Messer. From this place he was taken on August 21st by ambulance to the East Baptist Hospital at Knoxville, Tennessee, a distance of approximately 100 miles from his employer's mine. In the latter hospital he was examined by Dr. M. Frank Turney, a neuro-surgeon, and he was diagnosed as having a herniated disc which was causing complete paraplegia at the fifth lumbar vertebra and at the first sacral vertebral interspace. An operation was made at the site of the trouble by this physician, who testified at the hearing that "the disc was sufficient to cause complete blocking and interruption of the nerves at this level."

Sexton continued hospitalized and under the care of Dr. Turney until September 24, 1953. On this date he was transferred to the Lee-Collmann Clinic in Knoxville and placed under the care of Dr. Walter J. Lee, a physiotherapist, who treated him to enable him to regain the use and control of his body. He was in a wheel chair when he was turned over to Dr. Lee, and Sexton, while under treatment by Dr. Lee, progressed to the point that he could walk with two crutches and a brace on each leg. On October 23, 1953, although not restored to health, he was allowed to return home. It was Dr. Lee's opinion that Sexton will be permanently paralyzed in his legs below both knees and he will be unable to undertake any work requiring the use of his legs, arms and trunk generally. This specialist thought Sexton was 100% disabled as to his ability to perform manual labor. On November 3, 1953, Sexton went to appellee's mine and reported his condition to one of its representatives.

The employer refused to recognize the validity of Sexton's claim of injury as one arising out of the alleged accident and Sexton filed his application for compensation with the Workmen's Compensation Board on February 17, 1954. The principal is-

sues raised before the Board were: (1) Whether timely notice of the accident and injury was given to the employer as required by statute; and (2) whether Sexton actually sustained an accident and injury in the course of his employment as asserted.

The Board found that fellow employees of Sexton had communicated to the employer's agents and representatives knowledge of Sexton's condition, with the result that the employer was placed upon notice of his injury; that Sexton's failure to report his accident seasonably was justified under the circumstances; and that Sexton had sustained an injury which arose out of and in the course of his employment which would render him totally disabled for an indefinite period. The Board attributed 75% of his disability to his alleged injury. Upon appeal to the Harlan Circuit Court it was adjudged, as a matter of law, that Sexton had failed to give the employer timely notice as required by statute and, for this reason, the Board's award was set aside.

The employer maintained below and insists here that KRS 342.185 bars a recovery upon the part of Sexton for the reason that he failed to notify his employer of the accident "as soon as practicable after the happening thereof," which that statute requires to be done. In T. W. Samuels Distillery Co. v. Houck, 296 Ky. 323, 176 S.W.2d 890, we held that compliance with this provision is mandatory and that if there is a delay in giving the notice the burden is upon the complainant to establish it was not practicable to notify sooner. However, we should point out the rigid provision of KRS 342.185 is softened by KRS 342.200, which reads: "Want of notice or delay in giving notice shall not be a bar to proceedings under this chapter [KRS Chapter 342] if it is shown that the employer, his agent or representative had knowledge of the injury or that the delay or failure to give notice was occasioned by mistake or other reasonable cause."

The sole question passed upon by the lower court was the sufficiency of the compliance by Sexton with the notice requirement contained in KRS 342.185. The learned trial judge was of the opinion that Sexton had not adequately informed his employer of the alleged accident and injury "as soon as practicable after the happening thereof." No consideration was given to the strong argument made here that the tardiness of Sexton in giving notice was because Sexton's injuries were of such a nature as to constitute a reasonable cause for his dereliction in this respect. We conclude Sexton's case falls within the protection offered by KRS 342.200, that is, his delay in giving notice under the circumstances was based upon a justifiable excuse. This view makes it unnecessary to discuss whether fellow employees of Sexton communicated to the employer, through its agents, knowledge of the alleged accident and injury.

The evidence in this case shows that no one was on duty where Sexton was working whom he could recognize as a foreman on the occasion of his injury. The regular foreman, Paul Carmony, was absent at the time in attendance at a funeral. It was also brought out that when the second shift ended the office of appellee had long been closed and the company physician had long since departed for the night. There was therefore no proper representative of the employer at its place of employment to whom the employee could then make the customary report. Sexton spent 76 consecutive days in two hospitals and in a clinic from 50 to 100 miles distant from his employer. During this period Sexton underwent surgery in the lower region of his vertebral column, and, according to Dr. Lee, he endured severe pain and suffered from emotional shock most of the time he was under treatment. Until the end of his stay in Knoxville he was unable to walk or get about and carry out the acts he normally was accustomed to perform. Thus Sexton was not only physically incapacitated but he was emotionally upset from the time he was

supposedly injured until he made known his condition to his employer. After giving due regard to all the facts in the record, the Board was of the opinion, and so found, that the delay in giving notice was shown to have been justified. We concur in this finding.

Northeast Coal Co. v. Castle, 202 Ky. 505, 260 S.W. 336, is relied upon to sustain appellee's contention that Sexton's failure to give timely notice was not founded upon reasonable excuse. That case turned on the finding of the Board that the claimant's condition was not work-incurred but resulted from a tubercular illness which was pre-existing. Furthermore, for certain reasons set forth in the opinion that had no bearing upon the decision of the case, the Board in the Castle opinion found that the neglect to inform the employer promptly of the accident placed the latter in a prejudicial position. Other assertions were also made in that opinion which were unnecessary to the conclusion reached, and we shall not discuss them. In view of what we have said, it is obvious that the Castle case differs materially from the case at bar.

We pass on to the last contention of appellee, which is that Sexton failed to sustain the burden of establishing that he was injured while engaged in the work of his employer. Sexton not only testified he received his injury as a result of an accident on August 5, 1953, giving a description of the familiar symptoms accompanying the rupturing of a disc, but Dr. Turney, the surgeon who operated on him, corroborated Sexton's statement when he testified, in substance, that "the incident around August, 1953, was the aggravating feature" that gave rise to Sexton's disability. We believe this evidence was of sufficient probative value to sustain the Board's finding that Sexton's injury arose out of and in the course of his employment. See Clear Fork Coal Co. v. Gaylor, Ky., 286 S.W.2d 519, and the cases cited therein. We shall not discuss the details of the award, for the reason that no question was raised concerning this phase of the case.

Wherefore, the judgment is reversed with directions that it be set aside and a new one entered upholding the award of the Board.