**Claud (Claude) C. MESSER, Appellant,**

**v.**

**Theodore DREES et al., Appellees.**

Court of Appeals of Kentucky.

June 5, 1964.

Rehearing Denied Oct. 16, 1964.

James A. Nolan, Ware, Bryson & Nolan, Covington, for appellant.

Robert E. Ruberg, O'Hara & Ruberg, Covington, for appellees.

PALMORE, Judge.

This is a Workmen's Compensation case involving the reopening provision of KRS 342.125(1). The employe appeals from a judgment of the circuit court sustaining the action of the board in dismissing his application because there was insufficient indication of a mistake or change in conditions to establish grounds for reopening.

The appellant, Claud C. Messer, was a heavy equipment operator and at the time of the accident was 44 years old. He had been a steady worker. On August 4, 1960, while operating a backhoe, he was struck on the left front side of his head by a 6-pound clevis, a fitting rigged to a swinging line. He was knocked unconscious and probably fell to the ground from his seat on the machine, though no one present saw the accident and Messer is unable to say what happened immediately following the blow. Two of his jaw teeth were "sheared off." He regained consciousness very shortly but was kept in the hospital overnight for observation.

Messer went back to work on August 15, 1960, and stayed about two weeks, but complained of headaches. After laying off another three weeks he returned on September 19, 1960, but could not stand the jarring of the machine and finally quit again on October 8, 1960. He has not been able to return to work at all since that time.

A compensation claim filed in December of 1960 resulted in an award reflecting total disability for 40 weeks and a 10% partial permanent disability thereafter. The full board award was made on September 19, 1961, and was based on testimony taken in March, April and May of that year. On September 18, 1961, while the matter was pending on review before the full board, the claimant, through new counsel, sought a reopening for the purpose of introducing further medical testimony. A supporting affidavit of counsel stated that it had been

discovered from a competent psychiatrist (whose report was attached) that Messer was suffering a traumatic neurosis, that this had been unknown to both present and previous counsel; and that further proof would establish a change of conditions and the existence of mistake in the referee's estimate of the claimant's condition.

The employer contested the motion to reopen, pointing out that at least one of the medical witnesses who testified in May of 1961 had stated specifically that Messer's inability to return to work was the result of something other than an organic cause, apparently a neurosis. Hence it was argued that his counsel had simply failed to adduce timely proof with regard to causation. The motion was overruled, and in its opinion and award delivered the next day the board commented as follows:

> "There is also evidence indicating that the plaintiff may be suffering from a traumatic neurosis. However, the evidence presented by the plaintiff is highly insufficient to sustain this proposition, particularly as to causation."

No appeal was taken. A year later, on September 18, 1962, the claimant again moved to reopen on the same grounds as before, this time attaching as a part of the supporting affidavit a report by another psychiatrist, Dr. Max L. Lurie, to the effect that "Mr. Messer is suffering from organic brain disease in the form of a post traumatic encephalopathy manifested by blackout spells, severe memory loss and impairment of his thinking and concentration. From the psychiatric standpoint, he is probably permanently and totally disabled from this accident in regards to any adequate work or social adjustment."

The board sustained the motion for the limited purpose of hearing evidence to determine the existence, vel non, of grounds

for reopening. Dr. Lurie testified for claimant and Dr. Charles D. Fuess, Jr., also a psychiatrist, testified for the employer. Both agreed that Messer is totally disabled. Dr. Lurie was of the opinion that "the psychiatric disability is the direct outgrowth of the injury which Mr. Messer suffered approximately two years beforehand." Dr. Fuess stated that "from the amount of information the patient could give me" he could not give the cause. He was inclined to suspect that the illness is emotional rather than organic and, if so, that an "emotional illness of this severity— these symptoms—would have to be of long standing." Dr. Fuess emphasized, however, that he did not have a dependable case history, and that "in most emotional illnesses an adequate history is almost mandatory to make a diagnosis." Most importantly, he conceded that a trauma such as Messer sustained on August 4, 1960, could precipitate or aggravate the type of disability he found in him.

On the basis of the testimony of the two psychiatrists the board issued an opinion and order "dismissing"[1] the motion to reopen "on the merits," that is, because "there has been no change in plaintiff's condition nor a mistake made in granting the original award." In thus concluding, the board seized on the above quoted comment from its previous opinion of September 19, 1961, to the effect that there was evidence at that time indicating traumatic neurosis, buttressed by Dr. Lurie's more recent testimony in which he expressed the opinion that Messer had been totally disabled from the time of the accident. Both the board and the circuit court on review took the position that the motion to reopen was a belated effort to develop evidence that could and should have been produced prior to the original submission of the case for decision in June of 1961.

[1]. The terminology is misleading, induced by the board's having "sustained" the motion for the purpose of determining whether there were grounds to sustain it. It is unnecessary, of course, to sustain a motion in order to hear evidence pro and con directed to the existence of grounds therefor. The "dismissal" was simply an overruling of the motion for lack of sufficient grounds.

To make a long story short, we do not agree. We think the case should have been opened for further testimony in September of 1961, pursuant to the first motion,[2] and that certainly it should be re-opened now.

There is a rule in the game of chess that once the player with the move has touched a man he must move that man. He cannot change his mind and move another. Here the attorney who represented Messer until after the case had been submitted and passed on by a referee pitched his claim on the theory that the compensable injury was confined to aggravation or "lighting up" of a pre-existing degenerative arthritic condition of the cervical spine. In the beginning it was not at all obvious that a psychiatric disturbance was involved. For example, the attending physician, a general practitioner, did not send him to a psychiatrist; he sent him, rather, to a neuro-surgeon and then to an orthopedic surgeon,[3] each of whom detected the presence of a psychological complication but refrained from an attempt to diagnose its cause or extent. Somewhere along the line, in April of 1961, Messer was seen by Dr. Thomas A. Weldon, the psychiatrist whose report dated September 14, 1961, was later used in support of the first motion to reopen. Whether counsel had a prompt report of this first examination by a psychiatrist and, if so, what it disclosed are not shown by the record. As we have suggested, however, Messer's present counsel did not know of it until immediately before they moved for permission to develop the matter further.

We do not know the reason for the failure of original counsel to pursue the question of what relationship, if any, exists between Messer's mental disturbance and the accidental injury he sustained on August 4, 1960. As of now, however, it is abundantly clear from a mere reading of the record that the outward and visible manifestations of his disability have progressed to the degree that what may not have been readily apparent in the spring of 1961 is now clear.[4] Somewhere during the course of this transition it was incumbent on Messer's counsel in the exercise of their professional responsibility to shift the course and theory of his claim. Their timing in this respect cannot fairly be judged according to the standards of medical skill; they are lawyers. And a workmen's compensation case is not a game in which a player may not reconsider his move once he has begun it. The first motion for reopening, in September of 1961, which stated in substance that there had been a misconception with respect to the nature of the disability, and thus in the way the case had been practiced, was in our opinion a timely and proper application under the particular circumstances at hand.

 We do not suggest that after a case has been lost or appears about to be lost counsel should be allowed to halt the proceedings and bring up reinforcements. But bearing in mind that compensation laws are fundamentally for the benefit of the injured workman, a just claim must not fall victim to rules of order unless it is clearly necessary in order to prevent chaos. Time often tells more about medical cases than the greatest of experts are able to judge in advance. In Clear Fork Coal Company v. Gaylor, Ky., 286 S.W.2d 519, 522 (1956), this court recognized, for

2. There is no contention that the overruling of that motion is a bar to the subsequent motion. See Clear Fork Coal Company v. Gaylor, Ky., 286 S.W.2d 519, 521 (1956).

3. At the time he testified in March of 1961 the claimant was wearing a neck brace and said he was sleeping at night with a 6-pound weight on his head.

4. The experiences of Drs. Lurie and Fuess in seeking an accurate case history from the patient in 1962 contrasted sharply with his testimony in March of 1961 and with his having provided a satisfactory history to Dr. Lotspeitch in September of 1960.

example, that even the permanence of a disability theretofore thought to be temporary "is of itself in the nature of a change." When subsequent events indicate that an award was substantially induced by a misconception as to the cause, nature or extent of disability at the time of the hearing, justice requires further inquiry. Whether it be called a "mistake" or a "change in conditions" is a matter of mere semantic taste. The important question is whether the man got the relief to which the law entitled him, based upon the truth as we are now able to ascertain it. Cf. Blue Diamond Coal Company v. Meade, Ky., 289 S.W.2d 503 (1956).

Wells v. Fox Ridge Mining Co., Ky., 243 S.W.2d 676 (1951), is distinguishable in that there was no change, actual or ostensible, in the claimant's condition, whereas in this case, though Messer's actual malady and consequent 100% permanent disability may actually have existed from the time of the accident, the observable symptoms necessary to an accurate and reliable diagnosis became more manifest over a period of time extending beyond the original hearing.[5]

▆ The case will be remanded for the taking of whatever additional proof is necessary to a fair determination of the nature, cause and extent of appellant's disability. If it is partially attributable to a pre-existing condition, not related to his work, which would eventually have been disabling regardless of the accident, but has been hastened or aggravated by the accident, apportionment may be ordered. KRS 342.005(2); Terry v. Associated Stone Co., Ky., 334 S.W.2d 926, 930 (1960). If the board finds itself insufficiently advised, as suggested in its order of September 19, 1961, KRS 342.315(1) provides access to independent professional advice of its own choosing.

The judgment is reversed with directions that it be remanded to the board for further proceedings consistent with this opinion.

5. Whether, however, such a progression would always be necessary to a reopening, we expressly decline to say.