**TURNER ELKHORN MINING CO. et al.,**
**Appellants,**

**v.**

**Fred O'BRYAN, Jr., et al., Appellees.**

Court of Appeals of Kentucky.

Feb. 10, 1967.

Rehearing Denied May 26, 1967.

Fred G. Francis, Howard, Francis & Howard, Prestonsburg, for appellants.

C. W. Napier, Jr., Hazard, for appellees.

DAVIS, Commissioner.

In this proceeding under the Workmen's Compensation Act, KRS, Chapter 342, the circuit court reversed an order of the Board denying appellee O'Bryan's motion to re-open his claim pursuant to KRS 342.125. The appellants challenge that ruling and urge that the Board's order denying the motion to reopen be reinstated.

On July 3, 1964, O'Bryan filed claim for compensation, averring that he was then totally and permanently disabled by reason of "pneumoconiosis or silicosis of the lungs."

Appellee gave his own testimony before a referee of the Board, and presented evidence by deposition of Dr. G. N. Combs. The doctor had examined X-ray films of appellee's lungs, and expressed his opinion, in part, in this language:

"The heart and great vessels appear within normal limits. There is minimal fibrosis in both lungs. There is also minimal fine nodulation scattered diffusely in both lungs. Bony thorax and diaphragm shadows appear within normal limits. Impression: The changes noted are felt to represent an early second stage pneumoconiosis."

In another answer, the doctor related:

"As I said, this is minimal change. In other words, this is not marked at all. It is, as stated, an early second stage pneumoconiosis."

When Dr. Combs was asked whether the conditions he had noted from the X-rays were sufficient to interfere with appellee's ability to work he responded that he had made no physical examination of appellee, had never seen him at all, and that disability could not be stated from X-ray changes alone.

Dr. Combs was asked on cross-examination whether he had made a distinctive diagnosis with a view to designating the pneumoconiosis as "anthrocosis, or anything else." His response to that inquiry is somewhat illuminating and was:

"Pneumoconiosis covers that group of industrial lung diseases, of which anthrocosis, silicosis, berylliosis, and so forth, belong. I did not make a specific breakdown of the exact one of these disease entities."

No further evidence in behalf of O'Bryan was placed in the Board's record at that time. However the employer and the Special Fund presented evidence from two physicians; these two doctors flatly testified that O'Bryan's X-rays showed no evidence of silicosis. Dr. E. R. Gernert, a specialist in chest diseases, testified for the employer, and gave answer to one question as follows:

"Q. If a person was going to develop silicosis, Doctor, and had a work history such as I have related to you here, as he has testified to, would one be able to pinpoint the particular period of time that he had the hazardous exposure that brought about his disease?

"A. No. We know it takes, in the concentration these fellows usually work in in the coal mines, it usually takes ten years or longer, and the only way one could tell when he developed that would be to have yearly X-rays, or about that time."

Dr. William H. Anderson, also a specialist in chest diseases, testified for the Special Fund, and after stating that he found no evidence of silicosis in O'Bryan's lungs, gave this response to an inquiry:

"A. We are able to say that he has by means of X-ray no evidence of silicosis. It is possible that he could have silica deposits in his lungs that could be seen microscopically. But even in people who have this small amount of silicosis, it does not cause disability, so that I think that we could say with a reasonable degree of certainty that he does not have any silicosis that could cause any disability."

With the record in this status the parties negotiated an agreed settlement award, approved by the Board on February 23, 1965, pursuant to KRS 342.265. The agreed award provided for payment of $2,500 in a lump sum to be paid entirely by the Special Fund. Payment of the award was made.

By a motion filed December 20, 1965, O'Bryan filed his request to reopen, pursuant to KRS 342.125; the motion was filed by his present counsel, not the same counsel who participated in the agreed settlement award.

In support of the motion to reopen O'Bryan filed the affidavits of Dr. W. C. Hambley and Dr. Nathan B. Herman. The gist of these affidavits is that X-ray examinations by these physicians led them to the definite conviction that O'Bryan has silicosis. Of particular significance is the affidavit of Dr. Hambley, which recites that the doctor had examined O'Bryan on October 27, 1964, (while the proceeding was pending, and before the agreed award) and on July 28, 1965. Pertinent language of the doctor's affidavit is:

"I * * * found that his physical condition is worse as compared with his examination on October 27, 1964. This is based on chest X-ray which reveals that the nodulation is more permanent and definite and now has the characteristics of a well developed Second Stage Silicosis (sic). His exercise tolerance is much worse in that [in] 1964 his pulse at rest was 64 and after climbing the stairs 100 and 76 four minutes later as compared to recent examination given, his pulse resting was 100, after climbing the same flight of stairs it was 140, and four minutes later 110. This indicates that he is having increased Cardial Respiratory (sic) failure "

Dr. Hambley gave as his opinion that O'Bryan's condition is attributable to "his pulmonary condition of second stage silicosis." He estimated that O'Bryan is totally and permanently disabled from all manual labor.

The supporting affidavit of Dr. Herman unequivocally states that O'Bryan now has demonstrable evidence of disabling silicosis. However, Dr. Herman had not examined the patient at any time prior to the agreed award.

The Board denied the motion to reopen, without assigning the matter for hearing, and without support of any medical proof refuting the affidavits just mentioned. The basis of the Board's ruling is gleaned from the following excerpt of the Board's opinion:

"Both the defendant and Special Fund have objected to the motion to reopen, on the grounds that there is no showing of change of condition, as the plaintiff is now claiming to suffer exactly the same disability from the same cause that he claimed in the original application which was settled.

"Considering the plaintiff's motion and the supporting medical reports in the most favorable light, the Board can find absolutely no justification for even assigning this matter for hearing on the motion to reopen."

It is apparent that the Board regarded the motion to reopen as based solely on "change of condition." The motion specifically relies upon "mistake" in addition to "change of condition." The Board accepted the arguments of appellants, which have been reiterated in briefs here, and which are of this tenor: Since the claimant asserted he was totally, permanently disabled from silicosis in his original application, it is obviously no change of condition for him to now make the same claim. Appellants assert that our cases stand for the proposition that any person who has silicosis is *ipso facto* totally, permanently disabled, hence O'Bryan was totally and permanently disabled when he settled, and is bound by the settlement. We are not able to accept that theory.

We think this case is ruled by the rationale of Messer v. Drees, Ky., 382 S.W.2d 209 and the cases therein discussed. It is patent that if, as argued by appellants, O'Bryan was totally, permanently disabled from silicosis it was a "mistake" for him to settle his claim for $2,500. Moreover, it is obvious that the Board could not have approved such a settlement if that had been the situation. KRS 342.265 requires that any agreed award be approved by the Board; this is not a perfunctory approval, but is one to be granted in the exercise of a

sound discretion. Manifestly, the Board would have abused such discretion had it approved an award of $2,500 for an employee suffering total, permanent disability from silicosis. Statutory allowances in such a case would have exceeded $16,000.

 We think there is no particular significance to be accorded the fact that the award of $2,500 was an agreed one; it would have been entitled to the same consideration had it been one reached by the Board on the record and independently from an agreement.

This record now supports the proposition that O'Bryan had incipient silicosis at the time of the agreed award. At that point the existence of the disease was not medically demonstrable; now, at least for the present purpose, it is. There is no suggestion that O'Bryan has had further exposure to silica particles; it becomes evident that whatever manifestations of silicosis he now has have developed since the agreed award. We think the present case is one of a "change of condition" or a "mistake," or both, within the precepts enunciated in Messer v. Drees, supra, and the cases upon which it is based.

 It is to be borne in mind that the circuit court's judgment does not make an award to O'Bryan; it merely directs the Board to reopen the case for further inquiry. It is our view that the circuit court's judgment properly recognizes the fundamental concept of the Workmen's Compensation Act, stated succinctly in Messer v. Drees, supra:

"The important question is whether the man got the relief to which the law entitled him, based upon the truth as we are now able to ascertain it." Id., 382 S. W.2d at 213.

The judgment is affirmed.

WILLIAMS, C. J., and HILL, MILLIKEN, OSBORNE, PALMORE, and STEINFELD, JJ., concur.