Vicki G. NEWBERG, Acting Director of Special Fund, Appellant,

v.

Darrell CASH; Warren County Fiscal Court; W. Bruce Cowden, Jr., Administrative Law Judge; and Workers' Compensation Board, Appellees.

WARREN COUNTY FISCAL COURT, Appellant,

v.

Darrell CASH; Vicki Newberg, Acting Director, Special Fund; Hon. W. Bruce Cowden, Jr., Administrative Law Judge; and Workers' Compensation Board, Appellees.

Nos. 92–CA–382–WC, 92–CA–447–WC.

Court of Appeals of Kentucky.

June 4, 1993.

Mark C. Webster, Labor Cabinet–Sp. Fund, Louisville, for Newberg.

Joseph R. Kirwan, Hixson, Downey and Travelsted, Bowling Green, for appellee, Cash.

L.J. Hollenbach, IV, Carole Meller Pearlman, Williams & Wagoner, Louisville, for Warren County Fiscal Court.

Before HUDDLESTON, McDONALD and WILHOIT, JJ.

McDONALD, Judge.

This is a workers' compensation case which presents the question of whether, upon a reopening, partial permanent disability (PPD) benefits may be awarded and made payable retroactively to the date after temporary total disability (TTD) payments were terminated. Under the specific facts and circumstances of this case, it is our opinion that PPD was properly awarded upon reopening. However, we conclude that payment of the award should have been ordered to commence as of the date the motion to reopen was filed and continue for a period of 425 weeks.

The Workers' Compensation Board (board) rendered an opinion on January 24, 1992, in which it thoroughly reviewed the history of this case. We rely on the board's rendition of the facts and circumstances of this matter and, in an attempt to avoid undue repetition, will address only those issues essential to our decision.

We agree that this case is somewhat unusual in the sense that in an original opinion, award and order of October 5, 1987, the "old" board found that claimant, Cash, had failed to establish that he suffered occupational disability. However, upon reopening it was determined by the administrative law judge (ALJ) that Cash suffered a thirty percent (30%) occupational disability and subsequently ordered benefits payable from the date TTD benefits terminated for a period of 425 weeks with no interest due prior to the date of the motion to reopen.

■ KRS 342.125 provides authority to reopen cases and increase an award of benefits where claimant proves both a change in his physical condition resulting from the injury which was at issue in the original claim and a resulting increase in occupational disability. The present case having been reopened, the ALJ reviewed the lay and medical testimony concerning claimant's occupational disability and concluded that his "occupational disability has substantially worsened since the Opinion and Award entered in October 1987." The evidence supports this conclusion. It was not until after the original opinion and award that it was necessary for Cash to undergo knee surgery. Dr. Lewis testified that Cash's knee problems would progressively worsen. Dr. Nehil assessed a greater degree of impairment upon reopening than he did prior to the original award. The ALJ's decision that Cash had undergone a change in occupational disability, being supported by substantial evidence, was properly affirmed by the board.

■ We now address the second contention on appeal; namely, did the ALJ err in allowing retroactive application beyond the date the motion to reopen was filed? In our opinion, the ALJ did.

KRS 342.125 states that a reopening "shall not affect the previous order or award as to any sums already paid thereunder." Interpretation of this provision has

worked to prevent retroactive effect of awards to claimants upon reopening. However, as previously indicated, the case at hand is unusual in that the ALJ found no permanent partial disability at the time of the original claim, and thus there was never any award of PPD benefits.

The ALJ and the board relied upon the cases of *Williams v. Gordon*, 313 Ky. 377, 231 S.W.2d 89 (1950); *Clear Fork Coal Company v. Gaylor*, Ky., 286 S.W.2d 519 (1956); and *Anderson v. Whitaker*, Ky., 247 S.W.2d 980 (1952), for the authority to run the permanent partial award, made pursuant to the reopening, from the date of the last payment of TTD benefits to Cash. In our opinion, reliance upon those cases for the authority to make Cash's award retroactive is misplaced. In both *Williams* and *Anderson*, the claimant's injury was found, upon reopening, to have been greater than originally thought. The degree of occupational disability had not changed or gotten worse since the original award in those cases; instead, it was determined upon reopening that the degree of occupational disability was originally evaluated too low by mistake. By contrast, upon reopening of Cash's case, it was determined that his condition had deteriorated to a point where he now suffered a 30% occupational disability as a result of the original injury. Thus, a retroactive award in the present case to the date Cash's TTD payments ceased in reliance upon the authority of *Williams* or *Anderson* is inappropriate. Such an award would require payments back to a point in time when it has been previously determined Cash suffered no permanent occupational disability.

The concepts set forth in *Williams* and *Anderson* do, however, support the conclusion that Cash is entitled to 425 weeks of PPD benefits. Under our statutory scheme, claimants may receive 425 weeks of PPD benefits. As stated, in the present case, Cash did not receive *any* award for PPD until such time as his case was reopened, nor did Cash receive additional TTD payments following his second surgical procedure. KRS 342.730(1)(b) provides for the payment of PPD benefits for a period of 425 weeks; no more, no less. In

our opinion, Cash, having been determined to suffer a 30% permanent partial disability at the time of the reopening, should be entitled to benefits for 425 weeks.

There being no previous award and not one payment of PPD benefits made by the employer or the Special Fund to Cash under the original claim, an award for benefits commencing on the date of the motion to reopen and continuing for a period of 425 weeks is appropriate. Such an award would not, in our opinion, violate the prohibition against orders or awards which "... affect the previous order or award as to any sums already paid thereunder." We conclude that awarding benefits from August 23, 1989, forward for a period of 425 weeks in this instance would not affect any previous award in a manner the legislature sought to prohibit. Further, because Cash has yet to receive any payment for a permanent partial disability, there are no weeks of payments to credit the Special Fund or the employer. Thus, the 425-week period of compensation should not be diminished.

We are mindful that it may appear unfair to award a claimant, who reopens his case, 425 weeks of benefits for his disability as determined at the time of reopening where he received no benefits at the time of his original claim, while a claimant who is receiving benefits under an original claim, upon reopening and proving a greater degree of disability, will be awarded increased benefits with the compensable period being reduced by the number of weeks for which he has previously been compensated under the original order. However, our system of workers' compensation is a creature of statute and it is the prerogative of the legislature to so limit benefits to occupationally disabled workers.

For all the foregoing reasons, the board's decision affirming the award and order of the ALJ is affirmed in part and reversed in part. That portion of the decision affirming the ALJ's award of PPD for 425 weeks is affirmed. However, the decision is reversed with respect to the order that PPD payments shall be effective retroactively to the date TTD benefits ceased.

The case is remanded for entry of an order effectuating payments of PPD for a period of 425 weeks commencing August 23, 1989, the date the motion to reopen was filed.

All concur.