RENDERED: MAY 2, 2025; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1421-WC

JEREMY STARR                                                    APPELLANT


                    PETITION FOR REVIEW OF A DECISION
v.              OF THE WORKERS' COMPENSATION BOARD
                         ACTION NO. WC-18-83724


GRAYBAR ELECTRIC;
HONORABLE W. GREG HARVEY,
ADMINISTRATIVE LAW JUDGE;
AND WORKERS' COMPENSATION
BOARD                                                           APPELLEES


OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE: CALDWELL, CETRULO, AND A. JONES, JUDGES.

CETRULO, JUDGE: Jeremy Starr ("Starr") appeals from the decision of the

Workers' Compensation Board ("the Board") which affirmed the opinion, award,

and order of the Administrative Law Judge ("ALJ") finding that Starr did not

suffer a permanent impairment from a work-related injury sustained at his

employment with Graybar Electric ("Graybar"). The parties agree that this appeal

centers on the interpretation and application of this Court's decision in *Bowerman v. Black Equipment Company*, 297 S.W.3d 858 (Ky. App. 2009). The ALJ concluded that *Bowerman* barred him from revisiting a previous finding made in the interlocutory opinion, despite his recognition that the previous finding was inaccurate. Upon appeal to the Board, two members agreed that *Bowerman* precluded the ALJ from modifying a factual finding made in the interlocutory opinion. The third member of the Board disagreed and would have remanded the matter to the ALJ for an amended decision. Because we find the ALJ's decision that he could **not** correct a mistake of fact within a previous interlocutory opinion was based upon a misconstruction of *Bowerman*, we reverse the Board and remand this matter to the ALJ for additional findings of fact and conclusions of law. Such findings may differ from those made by the ALJ in the earlier interlocutory opinions so long as the ALJ determines that such findings are based on new evidence, or the ALJ concludes that the prior findings were the result of fraud or mistake. *Bowerman*, 297 S.W.3d at 867.

## FACTUAL AND PROCEDURAL BACKGROUND

Graybar employed Starr as a delivery driver at the time of a work-related injury on March 20, 2018. While making a delivery on the above date, Starr was pulling a bundle of pipes from a truck when his back "just totally locked

up," and he had trouble getting back into the truck. He experienced immediate pain in his low back. Starr filed a workers' compensation claim.

However, Starr had previously been involved in a motor vehicle accident ("MVA") in December 2004, unrelated to work. A lumbar MRI performed on January 20, 2005 had revealed one disc herniation at L5-S1, but did not show a second disc herniation at L4-5, a finding which would become significant.

Starr had undergone treatment after the 2004 accident, but after 2007 he had no further treatment until the 2018 work injury. Following the work injury, he began treatment with Dr. Charles Crawford, who performed a fusion surgery at L4-5 and L5-S1 for spondylolisthesis, a disc herniation, and stenosis.

The ALJ rendered an Interlocutory Opinion ("First Interlocutory Order") on March 20, 2020 and concluded, in part:

> Starr had a 2004 motor vehicle accident. **A 2005 lumbar MRI revealed disc herniations at L4-5 and L5-S1 with involvement of the nerve root on the left**.
>
> . . .
>
> **Here, the ALJ is faced with a situation where Starr had two known and diagnosed disc herniations in 2005**. He received active treatment until 2007 and then stopped. The 2018 incident occurs and he has persistent complaints of pain with limited treatment.
>
> The ALJ has reviewed the evidence and is persuaded Starr suffered at least a lumbar strain as a result of the 2018

work incident. This is based on the opinions of both physicians. **The ALJ is not persuaded that Starr suffered new disc herniations at L4-5 and L5-S1 as a result of the 2018 work incident**.

(Emphasis added.)

In this First Interlocutory Order, the ALJ did find the medical treatment from the date of the injury was compensable since he found an injury occurred.[1] However, he ruled that Starr was not yet at maximum medical improvement ("MMI") as he required additional medical workup, and he was not entitled to past temporary total disability ("TTD") benefits.[2] The ALJ reserved questions of future TTD and any permanent income benefits for future adjudication.

Graybar filed an additional medical dispute in 2021 contesting the spinal fusion surgery recommended by Dr. Crawford. Graybar argued that the surgery was unrelated to the work injury and relied upon reports from Dr. Thomas Menke, who had evaluated Starr at Graybar's request. In early 2022, the parties

---

[1] While the ALJ rejected Starr's claim that the 2018 work incident caused his disc herniations, he nonetheless determined that "Starr suffered at least a lumbar strain as a result of the 2018 work incident."

[2] With respect to Starr's claim for TTD, the ALJ determined that "Starr remained able to work after the injury as he was seeking work and did, in fact, return to work for which he had training and experience. As such, no award of past due TTD is made." The ALJ reserved judgment regarding Starr's entitlement to prospective TTD, noting that it was dependent on his future course of treatment.

returned to the ALJ for a hearing as to the compensability of this surgery. In this "Second Interlocutory Order," the ALJ concluded the surgery was directed at the degenerative process in Starr's spine and was not the result of the 2018 work injury. In so finding, the ALJ again noted:

> Complicating the question of causation and the extent of Starr's alleged injury is the fact he had a rear-end motor vehicle accident on December 7, 2004. **That accident resulted in back pain and treatment and diagnosis of herniated discs at L4-5 and L5-S1**. Those are the same levels at which the fusion surgery in 2022 was performed.
>
> . . .
>
> **It is clear from the evidence Starr suffered herniated discs at L4-5 and L5-S1 as a result of the 2004 motor vehicle accident**.

(Emphasis added.) In so finding, the ALJ specifically indicated he was relying upon two experts for Graybar – Dr. Sexton and Dr. Menke. Starr proceeded to undergo the surgery without payment from his employer. A final Benefit Review Conference ("BRC") had not yet been conducted, and a final award had not yet been made.

Subsequently, new counsel entered an appearance for Starr and requested the opportunity to develop additional proof, which was granted. At counsel's request, Dr. Gregory Nazar performed an evaluation and assessed a 25% permanent impairment rating. Dr. Crawford, who had performed the surgery, testified by deposition and opined that the spondylolisthesis in the L4-5 disc space

-5-

was related to the 2018 work event. For Graybar, Dr. Menke provided another independent medical evaluation report and disagreed with Dr. Nazar and Dr. Crawford as to the surgery being related to the work injury and as to the permanent impairment from the injury.

The matter then proceeded to the BRC before the ALJ where the parties agreed that the issues to be heard included the following: extent and duration; work-related injury/causation; permanent income benefits per Kentucky Revised Statute ("KRS") 342.730; TTD; pre-existing active disability/condition; entitlement to medical expenses; compensability of fusion surgery; past, present, and future medical benefits; and conformity with the AMA guides.

In this "Final ALJ Order" of April 15, 2024, the ALJ noted the additional medical opinion evidence submitted, but also noted that the surgery had occurred prior to this final hearing and decision. The ALJ stated the holding in *Bowerman* prohibited him from revisiting the prior finding that the L4-5/L5-S1 fusion was not related to the 2018 work injury. The ALJ further stated "the evidence introduced was not 'newly discovered' and there is no indicia of fraud or mistake that would allow a reversal of that finding here. To do so would, considering the holding in *Bowerman*, constitute an abuse of the ALJ's discretion."

Starr appealed to the Board, asserting the ALJ erred in failing to correct the mistake regarding the prior injury from the 2004 MVA, and the ALJ

-6-

should have considered the new evidence when determining the final resolution of the claim. As noted, the Board was split in its opinion, with the majority holding:

> Even though the ALJ incorrectly stated Starr had disc herniations at two levels as a result of the 2004 MVA, the evidence he relied upon, Dr. Menke's reports, constitutes substantial evidence to support the ALJ's conclusion.

The majority further found the additional evidence from Drs. Nazar and Crawford did not constitute "newly discovered evidence" such as could support revision of the interlocutory opinions because it was evidence that existed and could have been presented before the interlocutory opinions. The majority therefore affirmed the ALJ, and this appeal resulted.

## STANDARD OF REVIEW

Within workers' compensation claims, the ALJ is the factfinder, and the Board may not substitute its judgment for that of the ALJ as to the weight of the evidence on questions of fact. KRS 342.285(1) and (2). However, the Board should review the ALJ's Final Order, in part, for clear error. KRS 342.285(2)(d). More specifically, the Board must determine if the ALJ order, decision, or award "is clearly erroneous on the basis of the reliable, probative, and material evidence contained in the whole record[.]" KRS 342.285(2)(d). If the fact finder finds in favor of the person having the burden of proof, the burden on appeal is only to show that there was some substantial evidence to support the decision. *See Special Fund v. Francis*, 708 S.W.2d 641, 643 (Ky. 1986). However, if the ALJ finds

-7-

against the party having the burden of proof, the appellant must "show that the ALJ misapplied the law or that the evidence in [his] favor was so overwhelming that it compelled a favorable finding." *Gray v. Trimmaster*, 173 S.W.3d 236, 241 (Ky. 2005). Our role then, is to correct the Board only if we find "the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice." *W. Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687-88 (Ky. 1992).

## ANALYSIS

The Interlocutory Orders made a mistaken finding, that Starr's *two* herniated discs pre-dated the 2018 work-related injury. The ALJ, the Board, and Graybar all admit this was a mistake and that only *one* herniated disc appeared on the 2005 MRI. Graybar argues it was a minor misstatement, a typographical error, or a small flaw that does not constitute a basis for remand. We are not factfinders, but the impact of this mistaken finding was *not* minor considering the cause and extent of Starr's second herniated disc *is the root of his claim*. Graybar further argues that the fact, while mistaken, was still based on medical evidence and is uncorrectable due to *Bowerman*.[3]

---

[3] In its brief, Graybar also included a single paragraph asserting that Starr was precluded from relief because he did not file a petition for reconsideration pursuant to KRS 342.281(1), asking the ALJ to correct the errors in the interlocutory orders. In *Eaton Axle Corporation v. Nally*, 688 S.W.2d 344, at 348 (Ky. 1985), *superseded by statute as stated in Smith v. Dixie Fuel Company*, 900 S.W.2d 609 (Ky. 1995), we stated that no award, order, or decision of an ALJ shall be reversed or remanded on appeal because of failure of the ALJ to make findings of an essential

Conversely, Starr argues the ALJ should have exercised his discretion to correct his mistake and should have considered the additional evidence before issuing the Final ALJ Order. Thus, Starr asserts, the Board erred by affirming the Final ALJ Order instead of remanding for additional findings and consideration of the new evidence.

It is true that once the rights of the parties have been finally determined, litigation should end. *Slone v. R&S Mining, Inc.*, 74 S.W.3d 259, 261 (Ky. 2002). Yet here, under these circumstances, the issues did not reach finality until the Final ALJ Order.

The Interlocutory Orders were not appealable. A party may only appeal the ALJ's order or award to the Board "in accordance with administrative regulations promulgated by the commissioner[.]" KRS 342.285(1). The regulations governing workers' compensation permit appeals to the Board only from a "final award, order, or decision" of the ALJ. 803 Kentucky Administrative Regulation 25:010 § 22(2)(a). The regulations state that a final order shall be

---

fact, unless said failure is brought to the attention of the ALJ by Petition for Rehearing. However, "issues regarding questions of law need not be preserved pursuant to a petition, but rather, may be appealed directly to the Board." *Brasch-Barry General Contractors v. Jones*, 175 S.W.3d 81, 83 (Ky. 2005). Legal errors would include whether the ALJ misapplied Chapter 342 to the facts; made a clearly erroneous finding of fact; rendered an arbitrary or capricious decision; or committed an abuse of discretion. *Wilkerson v. Kimball Int'l, Inc.*, 585 S.W.3d 231, 237 (Ky. 2019). Here, the ALJ did not fail to make a finding on an essential fact. He simply erred in his interlocutory rulings and then felt constrained by his interpretation of *Bowerman* to correct that error.

determined in accordance with Kentucky Civil Rule of Procedure ("CR") 54.02. Furthermore, CR 54.02(1) and (2) permit appeals from only final judgments and allow revision of interlocutory orders "*at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties*." (Emphasis added.)

We note that our conclusion in this regard is supported by *Transit Authority of River City v. Saling*, 774 S.W.2d 468 (Ky. App. 1989). In *Transit*, the employer appealed after the ALJ entered an interlocutory opinion awarding the claimant TTD. After reviewing the interlocutory opinion in conjunction with the applicable statutory sections and administrative regulations, we dismissed the appeal. In so doing, we held that it was clear that "no appeal was intended by the General Assembly from an award of interlocutory relief[.]" *Id.* at 469; *see also Ramada Inn v. Thomas*, 892 S.W.2d 593, 594 (Ky. 1995) (citing *Transit* with approval).

Here, the parties accepted the temporary status of the Interlocutory Orders by *overtly agreeing* to the open contested issues still subject to review at the final hearing. Prior to the February 2024 BRC, the parties explicitly listed "work-related injury/causation" and "pre-existing active disability/condition" as open issues subject to resolution at the final hearing. We agree with the dissenting

member of the Board that "[w]hatever had previously been resolved was still on the table as issues to be resolved by the ALJ in the final decision."

Then, in this first appealable decision, the ALJ had the discretion to weigh the evidence in full, but he did not exercise that discretion. On appeal, the Board had a duty to review for clear error, but failed to do so. In fact, the Board had a duty to review the Final ALJ Order for clear error "on the basis of the reliable, probative, and material evidence contained in the whole record." *See* KRS 342.285(2)(d).

> When subsequent events indicate that an award was substantially induced by a misconception as to the cause, nature or extent of disability at the time of the hearing, justice requires further inquiry. Whether it be called a "mistake" or a "change in conditions" is a matter of mere semantic taste. The important question is whether the man got the relief to which the law entitled him, based upon the truth as we are now able to ascertain it.

*Lakshmi Narayan Hosp. Grp. Louisville v. Jimenez*, 653 S.W.3d 580, 586 (Ky. 2022) (quoting *Messer v. Drees*, 382 S.W.2d 209, 212-13 (Ky. 1964)).

Here, the Board acknowledged the ALJ made a mistaken factual finding. That the mistaken finding was based on actual evidence does not change the inaccuracy of the "facts," or the Board's awareness of that mistake, nor the Board's burden to review for mistakes. Justice required further inquiry, and the Board is bound by the truth, not by mistaken factual findings. *See Messer*, 382 S.W.2d at 213.

-11-

The ALJ and the majority of the Board believed *Bowerman* barred them from revisiting or modifying the previous statements in two interlocutory awards, but we do not agree with that interpretation because *Bowerman* is distinguishable from the facts before us.

In *Bowerman*, the ALJ had rendered an interlocutory opinion, finding the claimant had not reached MMI, but had reached a level of improvement permitting some form of work. 297 S.W.3d at 860. No TTD benefits were awarded, although the ALJ awarded medical benefits based upon the claimant's treating surgeon. *Id*. As here, the ALJ placed the claim in abeyance pending MMI and the assignment of any permanent impairment rating. *Id*. When the claim was removed from abeyance, the ALJ, in the final opinion, abandoned her earlier findings and chose to rely on a different physician. *Id*. at 865. She then found the claimant had attained MMI at a date which pre-dated her Interlocutory Order. *Id*. The Board affirmed, stating the ALJ was not bound by her interlocutory decision when finally deciding the merits. *Id.* This Court reversed, holding the ALJ was without authority to reverse prior factual findings, absent a showing of new evidence, fraud, or mistake. *Id*. at 868. We note the ALJ altered course with *no additional proof* regarding the claimant's condition, and without explanation or discussion of mistake. *Id*. at 864.

The matter before us is distinguishable from *Bowerman* because (a) Starr presented both new evidence *and* evidence of mistake; (b) Graybar *did not object* to the new evidence; (c) the ALJ allowed the new evidence; (d) that new evidence was necessary to correct the ALJ's misunderstanding of the medical evidence; (e) both parties acknowledged the issues had not reached finality prior to the final hearing; and, (f) both the ALJ and the Board acknowledged the existence of the new evidence *and* the factual mistake. Under these circumstances, *Bowerman* does not preclude the ALJ from correcting an erroneous factual finding within a prior interlocutory order. *Id*. at 866-67. Despite some confusing language, the holding in *Bowerman* is simply that an ALJ may not "reverse a dispositive interlocutory factual finding on the merits in a subsequent final opinion, absent a showing of new evidence, fraud, or mistake." *Id*. at 867. Here, there was a showing of mistake, and new evidence was permitted without objection. We simply do not read *Bowerman* as prohibitive of correcting a mistake under these circumstances.

Consistently, in *Cook v. Paducah Recapping Service*, 694 S.W.2d 684 (Ky. 1985), our Supreme Court ordered remand on similar facts. Therein, the Board's opinion stated that a particular physician found no impairment. *Id*. at 688-89. However, that physician found the worker to be disabled and to have

some permanent impairment. *Id.* at 689. In remanding the matter, the Court noted the Board may have understood the testimony but:

> We cannot tell from the record. In the event the decision of the Board was based upon an erroneous understanding of the testimony [  ], we cannot speculate as to what the result might have been had the Board correctly understood the import of his testimony.

*Id.* All parties are entitled to findings of fact based upon a correct understanding of the evidence submitted during adjudication of the claim. *Id.* Here, the ALJ believed Dr. Menke had opined that Starr experienced a herniated disc at L4-5 and L5-S1 as a result of a 2004 MVA. That statement was incorrect. Dr. Menke did not opine that, and the 2005 MRI did not disclose a herniated disc at L4-5. Justice requires further inquiry. *See Messer*, 382 S.W.2d at 213.

On remand, we do not interfere with the ALJ's role as factfinder, and we acknowledge that the ALJ may choose what and whom to believe, especially in light of conflicting testimony. *See Copar, Inc. v Rogers*, 127 S.W.3d 554, 561 (Ky. 2003) (citations omitted). We merely encourage and reinforce the use of that discretion, including the authority to correct clear error through additional evidence under these circumstances. Here, *Bowerman* does not prevent the ALJ from correcting his mistake of fact, but it does prevent us from affirming an order that misconstrued precedent and committed error in assessing the evidence. *See Bowerman*, 297 S.W.3d at 866 (citing *Kelly*, 827 S.W.2d at 687-88) ("Appellate

-14-

review of any workers' compensation decision is limited to correction of the ALJ when the ALJ has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice."). Even more recently, the Supreme Court noted the Board can remand a matter to the ALJ for additional findings that may be different than the prior award where it is not clear the ALJ considered the evidence. Such is the case herein. *See Hall v. BPM Lumber, LLC*, 706 S.W.3d 191 (Ky. 2024).

**CONCLUSION**

As it is not clear whether the ALJ considered the new evidence or mistake – now acknowledged by all – we REVERSE and REMAND, with directions for the ALJ to enter additional findings of fact and conclusions of law on the contested issues to include the additional evidence submitted prior to the Final ALJ Order.

ALL CONCUR.

BRIEF FOR APPELLANT:

Sean P. Lohman
Louisville, Kentucky

BRIEF FOR APPELLEE GRAYBAR
ELECTRIC:

Johanna F. Ellison
Lexington, Kentucky