Nicola (Brown) GRAY Appellant,

v.

TRIMMASTER; Hon. J.Landon Overfield, Administrative Law Judge; and Workers' Compensation Board Appellees.

No. 2004–SC–1027–WC.

Supreme Court of Kentucky.

Sept. 22, 2005.

As Corrected Sept. 27, 2005.

John W. Hardin, Stuart & Hardin, Versailles, Counsel for Appellant.

James B. Compton, Donald Cameron Walton, III, Clark & Ward, PLLC, Lexington, Counsel for Appellee.

## OPINION OF THE COURT

In defining the term "injury," KRS 342.0011(1) requires that a work-related harmful change in the human organism must be "evidenced by objective medical findings." Despite acknowledging that the employer failed to file a timely Form 111, the Administrative Law Judge (ALJ) dismissed the claimant's application for benefits after determining that there were no objective medical findings of a harmful change in the human organism and, therefore, no compensable injury. *Gibbs v. Premier Scale Company/Indiana Scale Company*, 50 S.W.3d 754 (Ky.2001). Although the claimant maintained that unrebutted medical evidence of a 2% AMA impairment

due to pain amounted to such a finding and compelled an award, the Workers' Compensation Board and the Court of Appeals affirmed.

We affirm insofar as the AMA impairment did not compel an award on these facts. Insofar as the ALJ failed to give proper effect to the employer's failure to file a timely Form 111 (Notice of Claim Denial or Acceptance), we reverse the decision to dismiss the claim and remand this matter for additional findings of fact and conclusions of law. That is not to say that a decision in the claimant's favor is compelled.

The claimant was born in 1970 and is a high school graduate. She had experience working as a seamstress and presser in a uniform shop, working in a mail room, installing insulation, assembling printers, operating a plastics machine, trimming surf boards, and working in fast food restaurants. In September, 2001, she began working for the defendant-employer, assembling and upholstering seats for automobiles. She stated that the work involved repetitive motion, forceful twisting, the use of hand tools, and lifting up to 30–40 pounds. In an application filed on February 27, 2003, she alleged repetitive motion injuries to her arms as of January 25, 2002, and sometime in September, 2002. The application indicated that there was a dispute regarding the employer's liability for compensation and the amount or duration of benefits.

As required by 803 KAR 25:010, § 5(1)(d), the claimant's application for benefits included a letter from Dr. Brooks to her attorney that stated, in pertinent part, as follows:

It is my professional opinion that Ms. Gray's underlying "inflammatory process" is most likely caused by work and then further aggravated by continuing within the repetitive work environment. Unless she has had a previous complaint prior to beginning employment at this job, I would doubt that there would be a preexisting or not work-related condition that would be underlying.

On April 3, 2003, the Department of Workers' Claims informed the employer and Travelers Indemnity of Illinois of the claim, advised the employer to contact its carrier at the time of the injury, and advised the employer and Travelers to contact counsel of their choice and to notify the Department of counsel's name and address.

On April 25, 2003, the Department issued an order, setting forth the schedule for taking proof and the date of the benefit review conference (BRC). The order gave the employer 45 days (i.e., until June 9, 2003) to file a Form 111 Notice of Claim Denial or Acceptance and stated that if the Form 111 was not filed, all allegations in the application would be deemed admitted. KRS 342.270(2); 803 KAR 25:010, § 5(2)(b). The order gave all parties 60 days to take proof (i.e., until June 24), followed by an additional 30 days for the employer and then 15 days for rebuttal by the claimant.

The employer failed to file a timely Form 111, to introduce any proof, or to appear at the August 12, 2003, BRC. The BRC memorandum contained various stipulations, including that the claimant sustained work-related injuries in January and September, 2002. It noted the employer's failure to respond in any way to the claim. After stating that only the following issues "shall be subject to further proceedings," it listed "extent and duration, medical expense payment, [and] entitlement to TTD (temporary total disability)" as being the contested issues.

On August 13, 2003, counsel for Travelers filed a notice of representation on the

employer's behalf. Also on August 13, 2003, counsel filed a Form 111 in which it asserted that the alleged injury was not work-related, that any disability was pre-existing and active, and that the claimant did not sustain an injury as defined by KRS 342.0011(1). The employer was represented at the August 27, 2003, hearing.

The only medical evidence consisted of the letter from Dr. Brooks and the report of a June 11, 2003, evaluation by Dr. Owen, both of which were submitted by the claimant. They presented two different theories regarding the nature of the claimant's injury. Dr. Brooks indicated that the claimant had a work-related inflammatory process that was further aggravated by her repetitive work. He doubted that there was a pre-existing condition or an underlying non-work-related condition.

Dr. Owen determined that the claimant had a non-work-related rheumatoid condition and elevated sed rate that were exacerbated by her work. He noted that her chief complaint was hand and wrist pain that began in January, 2002. She associated it with the repetitive motions involved in twisting and pulling leather and cloth while making automobile seats. She explained to Dr. Owen that she first experienced pain in her right hand when using a vibratory tool called a "hog ring gun."

Dr. Owen diagnosed persistent, bilateral wrist pain that was greater on the right side than on the left, but he noted that there was "no objective evidence at the present time for the severity of the pain." Dr. Owen thought that the claimant's injury was the cause of her complaints. He attributed 75% of her condition to rheumatoid arthritis and the elevated sed, which were non-work-related, and 25% to an exacerbation of the conditions due to her work. He assigned a 2% impairment for pain under the AMA *Guides to the Evaluation of Permanent Impairment (Guides)*,

indicating that the figure was based on a Fifth Edition Pain Score. In his opinion, the claimant did not have an active impairment before the injury. Nor was her condition due to the arousal of a pre-existing dormant condition. He noted that her previous work involved hand-intensive labor and that she was doing well presently, without ongoing labor, as evidenced by her minimal signs and symptoms. He thought that her work activities should be restricted due to her injury and stated that she did not retain the physical capacity to return to her previous work.

At the hearing, the claimant testified that she had not worked since January, 2003, and indicated that she remained under active medical care for her injury. She stated that the employer paid some voluntary TTD benefits but discontinued them, probably in November, 2002. After being treated by Drs. Brooks and Umansky at the Lexington Clinic, she was referred to Drs. Favetto and O'Neill, who were hand specialists. She stated that Dr. O'Neill ordered nerve conduction studies and anti-inflammatory medication.

The claimant described her symptoms as including numbness and tingling in both hands, occasional pain in the left hand, and frequent pain in the right hand, which was her dominant hand. The symptoms affected her fingers, hands, and forearms, sometimes including her elbows. She stated that she could not return to the type of work that she was performing for the employer because it involved repetitive motion, using vibratory tools and tools requiring forceful gripping. She thought that she could return to work as a seamstress or as a mail sorter.

In her arguments to the ALJ, the claimant requested medical benefits and either an open-ended TTD award that was based on her continuing medical treatment, or an award of permanent income benefits that

was based on the impairment Dr. Owen assigned. Noting that the extent and duration of disability remained at issue, the employer maintained that although there was some evidence of a temporary exacerbation of an inflammatory condition that had resolved, there were no objective physical findings of a permanent harm. The employer acknowledged that Dr. Owen attributed a 0.5% impairment to pain due to the exacerbation of non-work-related conditions. It argued, however, that an award based upon an AMA pain rating was improper absent any objective medical findings of an injury.

Based upon the employer's failure to file a timely Form 111, the ALJ noted that all allegations in the claimant's application were deemed to be admitted by the employer under 803 KAR 25:010, § 5(2)(b). Therefore, among other things, the employer admitted that the claimant sustained work-related injuries on January 25, 2002, and September, 2002; that the employer had due and timely notice of the injuries; that the claimant performed assembly work; and that she engaged in repetitive motion, forceful twisting, the use of hand tools, and lifting of 30–40 pounds.

Noting the claimant's testimony regarding work she could perform and the absence of any medical evidence of restrictions that would render her unable to work, the ALJ denied her request for TTD benefits. Turning to the question of permanent partial disability, the ALJ noted the absence of any "objective medical findings" as that term is defined in KRS 342.0011(33). Explaining that not all work-related harmful changes are compensable and that KRS 342.0011(1) requires a harmful change in the human organism to be evidenced by objective medical findings in order for it to be compensable as an "injury," the ALJ determined that the claimant failed to meet her burden of proof

and dismissed the claim. *Gibbs v. Premier Scale Company/Indiana Scale Company, supra.* After her petition for reconsideration was overruled, the claimant appealed.

KRS 342.270(2) provides that within 45 days of the issuance of the notice of the filing of a claim, the employer or carrier "shall" file a notice of denial or acceptance. 803 KAR 25:010, § 5(2)(a) requires a Form 111 to be filed within 45 days after notice of the scheduling order. Subsection (b) provides that if a Form 111 is not filed, all allegations of the application shall be deemed admitted. These provisions are mandatory. Their purpose is to facilitate the prompt and orderly resolution of workers' compensation claims. As interpreted by the ALJ, an employer's failure to file a timely Form 111 results in an admission of "all allegations of the application." The employer does not assert that this interpretation is erroneous.

Among other things, KRS 342.275(1) requires the Department to schedule a prehearing BRC, the purpose of which is to define and narrow issues, to discuss settlement, and to consider other relevant matters that may aid in the disposition of the case. Consistent with KRS 342.275(1), 803 KAR 25:010, § 13 states that the purpose of the BRC is to "expedite the processing of the claim and to avoid if possible the need for a hearing." Thus, it requires the parties or their representatives to be present and be authorized to settle the claim. The regulation also provides for a memorandum of stipulated and contested issues and limits further proceedings to those issues listed on the memorandum as being contested. It is apparent that enforcing the BRC memorandum and penalizing employers who fail to file a timely Form 111 or to appear at the BRC effectuates the purpose of the provisions by encouraging employers to comply with them.

■ For the purposes of Chapter 342, the words "injury" and "injuries" are legal terms of art. As amended effective December 12, 1996, KRS 342.0011(1) defines a compensable "injury" as being a work-related traumatic event or series of traumatic events that causes a harmful change in the human organism that is evidenced by objective medical findings. *Gibbs v. Premier Scale Company/Indiana Scale Company, supra.* In other words, a traumatic event must proximately cause a harmful change that is evidenced by objective medical findings in order to come within the definition of "injury."

■ In dismissing the claim on the ground that the claimant failed to prove an "injury," the ALJ failed to consider the proper effect of the employer's failure to file a timely Form 111. In failing to deny the allegations of the claimant's application, the employer admitted that she sustained "repetitive motion injuries to both upper extremities," that the injuries caused an "inflammatory process," and that they occurred "within the course and scope of her employment." Therefore, the employer effectively admitted that there were objective medical findings of a harmful change, i.e., of an inflammatory process. The admission subjected the employer to potential liability for the inflammatory process, but the burden remained on the claimant to prove the extent of that liability. *Roark v. Alva Coal Corporation,* 371 S.W.2d 856 (Ky.1963); *Wolf Creek Collieries v. Crum,* 673 S.W.2d 735 (Ky.App.1984); *Snawder v. Stice,* 576 S.W.2d 276 (Ky.App.1979). Acknowledging her burden, the claimant conceded on the BRC memorandum that extent and duration, medical expense payment, and entitlement to TTD remained contested. She has not appealed the decision regarding TTD. She asserts, however, that her unrebutted evidence compelled an award of income and/or medical benefits.

■ By failing to file a timely Form 111, the employer admitted that the claimant sustained work-related repetitive motion injuries, producing a harmful change that Dr. Brooks described as an inflammatory process. Although Dr. Brooks stated that the condition was both caused and aggravated by her work, he did not indicate that the condition caused a permanent impairment, required medical treatment, or caused any particular symptoms. Therefore, although the allegations of the claimant's application proved an "injury," they were insufficient, by themselves, to support an award of income or medical benefits.

Testimony from Dr. Owen offered a different theory for an injury. In his opinion, work-related trauma exacerbated a non-work-related rheumatoid condition, causing pain, a work-related harmful change. Pain was a harmful change that was not included in the allegations of the claimant's application for benefits and admitted by the employer; therefore, in order to prevail under this theory, she was required to prove its existence by objective medical findings. *Gibbs v. Premier Scale Co., supra.* In view of the decision that she failed to do so, her burden on appeal was to show that the ALJ misapplied the law or that the evidence in her favor was so overwhelming that it compelled a favorable finding. KRS 342.285; *Special Fund v. Francis,* 708 S.W.2d 641, 643 (Ky.1986).

KRS 342.0011(33) defines objective medical findings as being "information gained through direct observation and testing of the patient applying objective or standardized methods." Dr. Owen examined the claimant and noted that the Phalen's was negative and the Tinel's was negative bilaterally. He noted that there was no significant tenderness over the dorsal tendons

and no significant weakness in any of the wrist movements. He also noted that the various diagnostic tests revealed no work-related condition, but they did reveal non-work-related conditions that were exacerbated by her work. Although he diagnosed persistent wrist pain and indicated that he rated the impairment that it caused under the AMA standard, he noted specifically in his report, "There is no objective evidence at the present time for the severity of the pain."

To prove that she was entitled to income benefits for permanent partial disability under Dr. Owens' theory, the claimant was required to show that she had an injury as defined by KRS 342.0011(1) and that the injury resulted in an AMA impairment. In *Gibbs v. Premier Scale Co.*, 50 S.W.3d at 761, the court explained that:

> [A]lthough a worker may experience symptoms and although a physician may have diagnosed a work-related harmful change, the harmful change must be evidenced by objective medical findings as that term is defined by KRS 342.0011(33). Otherwise, it is not compensable as an "injury." KRS 342.0011(1).

In addressing the effect of the December 12, 1996, amendment to KRS 342.0011(1), the court noted that subjective factors are present even in the direct observation and testing of the patient, both on the part of the patient and in the perception of medical providers. It also noted, however, that the *Guides* contain standards for determining the extent of functional impairments and explained:

> The use of standardized methods decreases the extent to which the observation and testing of a patient are affected by subjective factors and, thereby, renders the resulting information a more

objective measure of a patient's actual condition.

*Id.*

█ Evidence that work-related trauma has caused an AMA impairment, is evidence that the trauma caused a harmful change in the human organism. AMA impairments are assigned using standardized methods. At issue in this case is whether direct observation and testing by medical providers verified the existence of the symptoms on which the impairment rating was based or whether the rating was based solely on the claimant's self-reporting.

Dr. Owen did not testify regarding how impairment due to pain is determined under Chapter 18 of the *Guides*. His report indicates that he relied upon Tables 18–4, 18–5, 18–6, and 18–7. Table 18–4 (Ratings Determining Impairment Associated With Pain) consists of a series of questions to which the patient responds. It includes a self-report of the severity of pain, of activity limitation or interference, and of the effect of pain on mood. Table 18–5 (Assessment of Pain Behavior) consists of a list of observable pain behaviors that the medical provider is to rate on a scale of – 10 to + 10, with a score of 0 signifying pain behaviors that are "mixed or ambiguous." Table 18–6 is a worksheet for calculating pain-related impairment based upon the scores the patient and medical provider assigned under the previous two tables. Table 18–7 classifies the degree of impairment based upon the Table 18–6 score.

It is apparent that only the score from Table 18–5 of the *Guides* is based on the medical provider's direct observation and testing of the patient. Dr. Owen rated the claimant at 0. Furthermore, he noted in his report that there was no objective evidence for the severity of the pain of which the claimant complained. Therefore, evidence of the claimant's AMA impairment

due to pain would not have supported a finding that an exacerbation of her rheumatoid arthritis caused a compensable "injury" had such a finding been made.

■ When concluding that the claimant failed to prove a compensable injury, the ALJ erred by failing to consider the effect of the employer's failure to file a timely Form 111. Although Dr. Owen's testimony did not establish that the claimant sustained a compensable injury, the employer's failure to file a timely Form 111 resulted in an admission that she sustained a work-related inflammatory process. If there is an injury as defined by KRS 342.0011(1), Chapter 342 imposes no additional requirement that AMA impairment from the injury be based on objective medical findings. Mindful that an ALJ may pick and choose among the witnesses' testimonies, we note that the ALJ could have determined from the evidence that the "injury" to which the employer admitted resulted in the impairment that Dr. Owen measured. If so, the claimant would have been entitled to income benefits. The evidence did not compel such a result, but by dismissing the claim for lack of a compensable "injury," the ALJ failed to even consider that possibility and must do so on remand.

803 KAR 25:010, § 13(9)(b) requires an injured worker to bring to the BRC copies of unpaid medical bills and documentation of unpaid out-of-pocket expenses, including travel for medical treatment. 803 KAR 25:010, § 13(2) and (7) provide, however, that the BRC is an informal proceeding and that a transcript shall not be made. The BRC memorandum indicates only that "medical expense payment" is a contested issue. At the hearing, the claimant testified that she continued to receive medical treatment for her injuries, but we are unable to discern from the record whether unpaid medical bills or expenses were at issue, whether the claimant sought only an award of future medical benefits, or whether she sought both. In any event, KRS 342.020 entitled her to be compensated for a disputed medical expense if she succeeded in proving that it was for reasonable and necessary treatment of her work-related injuries. It entitled her to an award of future medical benefits if she succeeded in proving that harmful changes to her arms that were evidenced by objective medical findings required ongoing medical treatment. By dismissing the claim based solely on the definition of injury, the ALJ failed to fully analyze the "medical expense payment" issue and, therefore, must do so on remand.

The decision of the Court of Appeals is hereby affirmed in part and reversed in part, and the claim is remanded to the ALJ for additional findings of fact and conclusions of law.

All concur.