**AMERICAN WOODMARK CORP., Appellant,**

v.

**Danny MULLINS; Hon. Chris Davis, Administrative Law Judge; and Workers' Compensation Board, Appellees.**

NO. 2015–CA–000880–WC

Court of Appeals of Kentucky.

RENDERED: JANUARY 22, 2016; 10:00 A.M.

Brief for Appellant: J. Denis Ogburn, Louisville, Kentucky.

Brief for Appellee: John Earl Hunt, Allen, Kentucky.

BEFORE: CLAYTON, NICKELL AND THOMPSON, JUDGES.

*OPINION*

THOMPSON, JUDGE:

Danny Mullins filed this workers' compensation claim after he sustained a work-

related injury while in the employ of American Woodmark Corp. American Woodmark petitions this Court to review the opinion and order of the Workers' Compensation Board affirming in part, vacating in part and remanding the opinion award and order and opinion and order on remand of the Administrative Law Judge (ALJ). American Woodmark argues the ALJ erred in finding it did not show good cause for its failure to file a Form 111 (notice of claim denial or acceptance) within the forty-five-day time limit as provided in Kentucky Revised Statutes (KRS) 342.270(2) and 803 Kentucky Administrative Regulations (KAR) 25:010, § 5(2)(a). Alternatively, it argues Mullins waived the issue of the timeliness of the Form 111. It further argues: (1) the evidence does not support the finding that Mullins's psychological claim was work-related; (2) the Board erred when it remanded the case to the ALJ for additional consideration of permanent partial disability (PPD) or medical determinations; and (3) there was no evidence of an intentional safety violation. We affirm.

On April 5, 2011, Mullins was injured when a piece of lumber fell from above a forklift he was operating and struck him in the face. On January 23, 2013, he filed a claim for workers' compensation benefits (Form 101) alleging he suffered work-related injuries to various body parts, including facial lacerations, nose fractures, injury to his eyes, mouth and teeth, and lower back, cervical and lumbar strain. He also alleged he suffers from various symptoms including numbness in his left leg and arms, headaches, memory and concentration problems, fatigue, anxiety, and depression. On February 24, 2013, Mullins amended his claim to allege a safety violation.

A scheduling order issued on February 20, 2013, set a benefit review conference (BRC) for June 14, 2013. Pursuant to the order, American Woodmark's Form 111 was due on April 6, 2013.

According to representations made by American Woodmark in its pleadings below, counsel for American Woodmark did not timely receive the scheduling order due to a clerical error of its adjusting firm. Consequently, its Form 111 was not filed until May 8, 2013. Although the Form 111 was not accompanied by a motion for leave to file as untimely, it was accepted and filed.

The record does not indicate that the issue of the timeliness of the Form 111 was raised or discussed at the time of filing. However, the September 24, 2013 BRC order identified the timeliness of the Form 111 as a contested issue. The case proceeded.

Mullins testified he is thirty-six years old and worked as a kiln operator for American Woodmark since 2002 and used a forklift to move pallets of wood into a kiln. Each pallet had thirty-two layers of wood with four-by-four pieces of lumber placed between the pallets to allow for air flow. There were additional four-by-four pieces on top of each pallet.

After moving the pallets, Mullins was required to adjust a baffle to regulate the heat and dry the wood. Mullins testified that the baffle in kiln number six had been previously hit and was no longer at the standard height and the concrete level in kiln number six made entry difficult. He testified he notified American Woodmark of his concern about putting wood in the kiln and reported the opening on the forklift guard was large enough for a board to enter the forklift.

On April 5, 2011, while moving wood into kiln number six, a four-by-four on top of the pallet fell twenty-two feet, struck the top of the kiln, went through the guard on

the forklift and struck Mullins in the face knocking him unconscious. Mullins has not returned to work since his injury. He testified he continues to have back and neck pain, headaches, blurred vision, sensitivity to light, numbness in his left leg, nose bleeds, bowel bleeding, breathing problems, sensitive teeth, balance problems, memory issues, panic attacks and depression.

Larry Hensley, plant manager for American Woodmark, testified an investigation after the accident was conducted and additional guards were placed on the forklifts. Prior to Mullins's accident, he was unaware of any issues with the guards, baffles, or height of the pallets. He testified the forklift guards were installed by the manufacturer and he was unaware of issues with the height of kiln number six or problems with the baffles.

Charles Sizemore, a project engineer for American Woodmark, testified that following Mullins's accident, an investigation was conducted and additional guards were placed on the forklifts. Prior to the accident, he was also unaware of issues with the height of kiln number six or problems with its baffles.

Freeland Patton was Mullins's team leader at the time of the accident. He testified the baffle in kiln number six had been hit and broken loose from its hinges several times and was not functioning properly. During safety meetings, he warned American Woodmark that the forklift guard was insufficient to prevent a four-by-four from injuring a worker. Although he requested the pallets be reduced to thirty layers, his request was not approved.

John Spencer was a maintenance worker for American Woodmark. He was aware that a four-by-four could fit through the forklift guards and notified his maintenance manager of the hazard. No alterations were made until after Mullins's injury.

Additional testimony from American Woodmark's employees confirmed that after Mullins's accident, additional guards were installed on the top of the forklifts.

Extensive medical evidence was presented. Records of the Hazard Appalachian Regional Hospital revealed Mullins was seen on April 5, 2011, with an open wound to his head and forehead, superficial injury to the cornea, and conjunctiva hemorrhage. A CT scan revealed no acute intracranial abnormality. A lumbar CT scan revealed mild levoscoliosis with the acute osseous abnormality. Mullins was diagnosed with corneal abrasion, lacerations to the right forehead, pain in the soft tissue of the face and subconjuntival hemorrhage. Five days later, Mullins was seen in the emergency room with a headache and anxiety attacks.

On April 7, 2011, Mullins was seen at the Mountain After Hours Clinic. An examination revealed right eye swelling, multiple lacerations to the right side of his face, cervical spine tenderness, and thoracic and lumbar paraspinal spasms. He returned on April 11, 2011, reporting neck and back pain.

Elmer Gabbard, D.M.D. examined Mullins on April 16, 2011. He found Mullins had fractures of fifteen teeth as a result of his work injury.

Throughout 2011, Mullins continued to be treated for complaints of headaches, vomiting, neck pain, mid back pain and low back pain and sought treatment at various medical facilities. On July 14, 2011, he was examined by Dr. Amit Patel who eventually performed two surgeries consisting of functional rhinoplasty, internal valve stenosis and external valve stenosis repair.

Mullins also sought psychological treatment. On February 24, 2012, he was diagnosed with pain disorder, post-traumatic stress disorder and hypertension and, in August 2013, with major depressive disorder.

Specific testimony was relied on by the ALJ and the Board. Dr. Syamala H.K. Reddy treated Mullins on April 6, 2011. An examination revealed a contusion injury to the right forehead and right eye, laceration of the right forehead, hematoma of the right upper eyelid, and corneoscleral laceration. On May 8, 2013, Dr. Reddy assigned a 1% impairment rating pursuant to the American Medical Association, Guides to the Evaluation of Permanent Impairment, 5th Edition (AMA Guides) for Mullins's "visual system."

Valeri Messeri, APRN, examined Mullins on April 7, 2011. A MRI found a protruding disc at L5–S1 and spinal stenosis at multiple levels in the cervical spine. In a questionnaire dated October 6, 2012, he listed as diagnosed neck and back pain, headaches, anxiety, post-traumatic stress disorder and memory problems. He indicated Mullins should be restricted from lifting over twenty pounds, standing or sitting for prolonged periods and never climb, balance or stoop.

Christopher Allen, Ph.D. performed a neuropsychological examination on September 6, 2011. His assessment included cognitive disorder, single episode depressive disorder, and generalized anxiety disorder. He recommended psychotherapy and speech and language therapy to remediate memory. He further recommended appointment of a guardian or conservatorship.

An independent medical examination (IME) was performed by Dr. Anbu K. Nadar on October 23, 2012. A physical examination revealed tenderness over the forehead, nasal bone, cervical paravertebral muscles, midline and paravertebral muscles, and lumbosacral area paravertebral muscles. Mullins had hypoesthesia over the lateral and plantar aspects of the left foot. Dr. Nadar diagnosed head injury with residual headaches; facial injuries; cervical and lumbosacral strains with non-verifiable radiculopathy; and anxiety and depression. He assigned a 5% impairment rating for the cervical spine, 5% for the lumbar spine, 3% for post-traumatic headache and chronic pain, and 2% for disfiguring scarring of the face for a combined 15% impairment rating pursuant to the AMA Guides.

Dr. Timothy C. Kriss performed an IME on June 11, 2013. He diagnosed a laceration to the forehead, contusion to the face and forehead, low back and neck strain, and post-traumatic migraine headache. Dr. Kriss opined that Mullins needed psychiatric care but his psychological problems were not work-related. Dr. Kriss assigned a 5% impairment rating for the cervical condition and 5% for the lumbar condition pursuant to the AMA Guides.

Dr. Daniel D. Primm, Jr. performed an IME on November 14, 2012, and diagnosed facial laceration, nasal fracture requiring two nasal septal surgeries, continued problems with nasal obstruction, cervical and lumbar strain and post-traumatic depression and anxiety disorder. He did not believe Mullins was at maximum medical improvement but assigned a 5% impairment rating for the cervical condition and 5% for the lumbar condition for a combined 10% impairment rating under the AMA Guides.

Dr. Robert P. Granacher Jr. performed a neuropsychiatric examination on November 20, 2012. Mullins reported depression, panic, thoughts of suicide, poor concentration, loss of memory, word-finding difficul-

ty, confusion, hearing voices, flashbacks, anger, arguing and crying. He complained of headaches, neck pain, right shoulder and arm pain, low back pain and left foot pain. Dr. Granacher opined that testing indicated a high probability Mullins was intentionally choosing incorrect responses. Psychological testing was deemed distorted due to over-reporting and could not be interpreted. Dr. Granacher was unable to draw an accurate conclusion concerning Mullins's mental condition or whether he had reached maximum medical improvement.

Mullins received treatment in 2013 at Kentucky River Community Care for adjustment disorder, anxiety and depressed mood. He reported feeling depressed, hopeless and sad since his work injury.

The ALJ awarded Mullins temporary total (TTD) and permanent partial disability (PPD) benefits for injuries to his cervical and lumbar spine and face but found Mullins did not suffer any psychological impairment as a result of his work-related injury. The ALJ did not make a specific finding regarding the alleged safety violation. The ALJ also did not address the timeliness of American Woodmark's Form 111.

Mullins petitioned for reconsideration requesting additional findings concerning the timeliness of the Form 111. He argued American Woodmark failed to establish good cause for the late pleading and, therefore, it admitted the safety violation and psychological condition.

In the order on reconsideration, the ALJ acknowledged the BRC order listed the timeliness of the Form 111 as a contested issue. The ALJ stated that because the Form 111 was untimely, he was "compelled to find" Mullins has a work-related psychological condition but based on Dr. Granacher's report, Mullins did not have a psychological impairment rating, restric-

tions or current need for medical treatment. The ALJ further found because the Form 111 was untimely and because Mullins testified that the lumber was stacked too high and had previously complained, he was "bound to enhance his TTD and PPD benefits by 30%."

American Woodmark appealed and Mullins cross-appealed. The Board vacated and remanded, directing the ALJ to make a specific finding as to whether American Woodmark established good cause for filing the untimely Form 111. If so, the ALJ was directed to decide the alleged safety violation and the alleged psychological injury based on the merits.

On remand, proof was reopened on the issue of whether American Woodmark had good cause for the delay in filing the Form 111. American Woodmark submitted an affidavit of the adjuster who maintained records through electronic filing. She confirmed the file contained a notification from the Department of Workers' Claims regarding the filing of Mullins's Form 101. However, the electronic file did not contain any record of the scheduling order.

The ALJ noted the scheduling order was mailed to the same address as the notice of filing of the Form 101. The ALJ was not persuaded that American Woodmark or its carrier did not receive the scheduling order and found it was not entered into the carrier's electronic database and not timely forwarded to defense counsel. The ALJ found the Form 111 was untimely and confirmed in all respects his initial opinion and award as modified by the order on reconsideration.

American Woodmark appealed arguing the ALJ erred in concluding its Form 111 was untimely filed without good cause. It also argued the evidence does not support the finding of a compensable psychological condition and an intentional safety viola-

tion. Mullins cross-appealed arguing the ALJ erred in failing to award income and medical benefits for an eye injury and in limiting future medical benefits to his cervical and lumbar spine, facial, and psychological injuries.

The Board held that whether American Woodmark established good faith was a question of fact and the ALJ did not abuse his discretion. It further rejected American Woodmark's contention that the issue of the timeliness of the Form 111 was waived noting that the issue was preserved as a contested issue at the BRC. The Board held that because the Form 111 was determined to have been untimely filed without good cause, Mullins's psychological condition is deemed work-related and the ALJ properly amended the award on reconsideration to include the psychological condition. It further held that Mullins's safety violation was pled under the general duty clause KRS 338.031(1)(a) and properly supported by lay testimony that American Woodmark was aware of the possible hazards caused by the baffles, pallet height and forklift guards.

As to Mullins's cross-appeal, the Board ruled because Mullins's eye injury is also deemed admitted by the failure to timely file the Form 111, the matter must be remanded to the ALJ to determine if Mullins sustained a 1% impairment for that condition as assessed by Dr. Reddy. Based on the same reasoning, the Board ruled the ALJ erred in limiting future medical care to the cervical and lumbar spine, face, and psychological condition and remanded to the ALJ to determine whether the additional conditions alleged in the Form 101 are permanent injuries. American Woodmark appealed.

■ American Woodmark's initial disagreement with the ALJ and the Board concerns the timeliness of its Form 111. KRS 342.270(2) states as follows:

Except with respect to claims for benefits by reason of coal workers' pneumoconiosis, the commissioner shall issue notice of the filing to all parties and shall promptly assign the claim to an administrative law judge. The administrative law judge shall facilitate the exchange of information pertinent to the claim pursuant to administrative regulations promulgated by the commissioner. Within forty-five (45) days of the date of issuance of the notice required by this section, the employer or carrier shall file notice of claim denial or acceptance, setting forth specifically those material matters which are admitted, those which are denied, and the basis of any denial of the claim.

803 KAR 25:010, § 5(2)(a) provides "[t]he defendant shall file a Notice of Claim Denial or Acceptance on a Form 111—Injury and Hearing Loss within forty-five (45) days after the notice of the scheduling order[.]" The regulation further provides: "If a Form 111 is not filed, all allegations of the application shall be deemed admitted." 803 KAR 25:010, § 5(2)(a)(b).

In *Gray v. Trimmaster*, 173 S.W.3d 236 (Ky. 2005), the Court addressed the consequences of an employer's failure to timely file a Form 111. It noted that the provisions contained in KRS 342.270(2) and 803 KAR 25:210, § 5(2)(a) are "mandatory." *Id.* at 240. The Court explained that the purpose of requiring an employer to timely file a Form 111 "is to facilitate the prompt and orderly resolution of workers' compensation claims." *Id.* The penalty provision contained in Subsection (b) of the administrative regulation that "all allegations of the application are deemed admitted" when an employer fails to file a timely Form 111, "effectuates the purpose of the provisions by encouraging employers to comply[.]" *Id.*

■ The failure to timely file a Form 111 does not, by itself, entitle the claimant to benefits. In *Gray*, the Court stressed that while the employer was deemed to have admitted that the claimant sustained an injury within the scope of employment, the burden remained on the claimant to prove the extent of the employer's liability. *Id.* at 241. The result is analogous to a default judgment in a civil action which determines liability but damages may be awarded only after a hearing and findings of fact and conclusions of law. *Deskins v. Estep*, 314 S.W.3d 300, 304 (Ky.App. 2010).

Because the issue was not presented, the *Gray* Court did not discuss whether an employer may be excused from the consequences of an untimely Form 111 upon a showing of good cause in the same manner that a party in a civil action may obtain relief from a default judgment. For lack of authority on this issue, the Board relied heavily on our Supreme Court's unpublished decisions. We also rely on unpublished precedent.[1]

In *Clark Regional Medical Center v. Lovings*, No. 2006–SC–0027–WC, 2006 WL 2987038 (Ky. Oct. 19, 2006), the Court indicated the same "good cause" for relief from a default judgment in a civil action would be sufficient to excuse an employer from filing a timely Form 111. However, citing law generally applicable to setting aside a civil default judgment, the Court held that "mere inattention on the part of the defendant or the defendant's attorney did not constitute good cause for setting aside a default judgment." *Id.* at *2. The Court further indicated actual prejudice to the claimant is not a factor to be considered. *Id.* at *3–4.

■ In *Neace v. Asplundh Tree Expert Co., Inc.*, No. 2007–SC–000268–WC, 2008 WL 1850622 (Ky. April 24, 2008), the Court noted the various civil rules providing for the failure of a party to timely answer a complaint and the default provisions. *Id.* at *2. Noting the disfavor of default judgments in civil actions and the application of a liberal standard when determining whether good cause exists to set aside a default judgment, the Court determined the same rule is applicable to the untimely filing of a Form 111. *Id.* at *3. Whether good cause for the delay has been shown by the employer is a factual determination to be made within the ALJ's discretion. *Id.*

■ The standard for appellate review of an ALJ's factual findings is a clearly erroneous standard. "In short, appellate courts may not second-guess or disturb discretionary decisions of an ALJ unless those decisions amount to an abuse of discretion." *Bowerman v. Black Equip. Co.*, 297 S.W.3d 858, 866 (Ky.App. 2009). An abuse of discretion occurs only when "an ALJ's decision is arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Id.*

■ On remand, the ALJ reopened the proof and determined American Woodmark's evidence that the scheduling order was not entered into the carrier's electronic database and, therefore, not forwarded to defense counsel in a timely manner, was insufficient to demonstrate good cause. We agree with the Board that the ALJ acted within its discretion. Inattentiveness or lack of diligence by the carrier or defense counsel is not "good cause" to excuse its delay in filing the Form 111.

---

1. Pursuant to Kentucky Rules of Civil Procedure (CR) 76.28(4)(c), unpublished Kentucky appellate opinions rendered after January 1, 2003, may be cited if there is no published opinion adequately addressing an issue.

*See Howard v. Fountain,* 749 S.W.2d 690, 692 (Ky.App. 1988).

■ American Woodmark argues Mullins did not move for a default judgment or to strike the Form 111 and, therefore, the issue is waived. Essentially, it contends that the burden was upon Mullins to file a motion for default judgment as provided for in Kentucky Rules of Civil Procedure (CR) 55.01. We disagree.

"The Kentucky Rules of Civil Procedure govern procedure and practice in all actions of a civil nature in the Court of Justice but apply to proceedings before an administrative agency only to the extent provided by statute or regulation." *Burroughs v. Martco,* 339 S.W.3d 461, 465 (Ky. 2011)(internal quotations and footnote omitted). CR 55.01 has not been adopted into KRS 342.270 or 803 KAR 25:010, § 5(2). To the contrary, the filing of a Form 111 is mandatory and, in the absence of a showing of good cause by the employer, the consequence for its untimely filing is provided. As observed the Board, American Woodmark could have "brought this matter to the forefront by filing a motion to permit the later filing of its Form 111[.]"

American Woodmark argues the evidence is insufficient to support the ALJ's determination on reconsideration that Mullins's psychological claim is work-related and the Board erred in remanding for additional findings regarding his entitlement to medical benefits for the conditions alleged in his Form 101. This argument ignores the mandatory language of KRS 342.270 and 803 KAR 25:010, § 5(2). Mullins's Form 101 alleged all his conditions were work-related. Because the Form 111 was determined to be untimely filed without good cause, the conditions are deemed work-related. *Gray,* 173 S.W.3d at 241.

■ Regarding the intentional safety violation, American Woodmark argues there was no expert testimony and the ALJ could not make his determination based only on lay testimony that the wood pallets were stacked too high, the forklift guards were insufficient and hazards were created by the condition of kiln number six. Mullins's claim was not based on a specific statute or regulation but on the general duty clause set forth in KRS 338.031(1)(a) requiring an employer to "furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employee[s]."

KRS 342.165 provides in pertinent part:

If an accident is caused in any degree by the intentional failure of the employer to comply with any specific statute or lawful administrative regulation made thereunder, communicated to the employer and relative to installation or maintenance of safety appliances or methods, the compensation for which the employer would otherwise have been liable under this chapter shall be increased thirty percent (30%) in the amount of each payment.

In *Apex Mining v. Blankenship,* 918 S.W.2d 225 (Ky. 1996), a safety penalty was imposed on the basis of an intentional violation of KRS 338.031(1)(a) after a worker was required to operate a defective piece of heavy equipment without brakes, with a malfunctioning decelerator and a throttle fastened in the wide open position, and which caused prior accidents but not been repaired. The penalty was upheld although KRS 338.031(1)(a) was the only safety law violated. The Court recognized that while the general duty statute was not as specific as desired, the hazard created by requiring a worker to operate equipment that was so patently defective that

the hazard was obvious to a layperson supported the imposition of a safety penalty. *Id.* at 229.

Testimony from Mullins and his coworkers established hazards related to the baffles, the pallet height, and the insufficient guards on the forklifts, all of which were known to American Woodmark prior to Mullins's injury and which reasonably contributed to Mullins's injury. We cannot say that the ALJ's factual finding that the general duty clause was violated was an abuse of discretion. *Brusman v. Newport Steel Corp.*, 17 S.W.3d 514, 519–20 (Ky. 2000).

For the reasons stated, the opinion and order of the Workers' Compensation Board is affirmed.

ALL CONCUR.