RENDERED: MARCH 25, 2021
TO BE PUBLISHED

# Supreme Court of Kentucky

2020-SC-0132-WC

NATHANIEL EDWARD MAYSEY                                        APPELLANT


ON APPEAL FROM COURT OF APPEALS
V.                            NO. 2018-CA-1121
WORKERS' COMPENSATION BOARD NO. WC-16-81368


EXPRESS SERVICES, INC;                                          APPELLEES
HONORABLE W. GREG HARVEY,
ADMINISTRATIVE LAW JUDGE; AND
WORKERS' COMPENSATION BOARD


**OPINION OF THE COURT BY JUSTICE HUGHES**

**AFFIRMING**

Kentucky Revised Statute (KRS) 342.165(1) provides for a 30%
enhancement of workers' compensation benefits if an accident is caused in any
degree by workplace safety violations committed by the employer. Appellant
Nathaniel Edward Maysey sustained a serious work-related injury on June 6,
2016 while employed by Express Services, Inc., a temporary staffing company.
Express Services placed Maysey at Magna-Tech Manufacturing, LLC where he
worked for five days operating machinery before being involved in an accident
that resulted in the amputation of his left arm above the elbow. Maysey settled
with Express Services prior to the final adjudication of his workers'
compensation claim. The sole remaining issue before the Administrative Law
Judge (ALJ) and now before this Court is whether Maysey is entitled to a 30%

enhancement of benefits from his employer, Express Services, as a result of workplace safety violations. The ALJ denied the enhancement and the Board and the Court of Appeals affirmed. For the reasons discussed below, we affirm the Court of Appeals, albeit with the reluctance expressed by the ALJ and echoed by the Board and appellate court. As currently written, the safety-violation benefit enhancement in Kentucky's workers' compensation statute does not apply to a temporary staffing company employee except in extremely limited circumstances, leaving a temporary employee without the same entitlement to enhanced benefits as an injured employee of the host company.

**FACTS AND PROCEDURAL HISTORY**

Shortly after graduating from high school, Nathaniel Maysey obtained employment with Express Services and was placed at Magna-Tech, a manufacturing facility in Glasgow, Kentucky that performs impregnation of casted automobile parts. His first day of work at Magna-Tech was June 1, 2016. On his sixth day at the facility, Maysey was assigned to Line 46. This assignment involved operating multiple machines simultaneously from a catwalk. Upon completion of the process using one machine, the employee moved a basket of parts with a hoist to the next machine. Maysey was injured on June 6, 2016, his first day working on Line 46.

The first machine on Line 46 was a dip tank. A bucket of parts was lowered into the dip tank and then lifted out with a hook and placed in the next machine, the centrifuge. Once in the centrifuge, the bucket rotated clockwise then counter clockwise before completing the cycle. The employee was then

2

required to reach his hand into the machine and attach a hoist hook to the bucket, then use the hoist hook and chain to lift the basket of parts and move it to the next machine.

Maysey received minimal training (approximately one hour) and was left on his own to feed buckets of parts through the six machines from his location on the catwalk. He was performing this function and believed the centrifuge had completed both cycles, so he reached in to connect the hoist hook to the basket when the machine started up again. Both the chain and the cable connected to the hook wrapped around his left arm and began to twist. Maysey was concerned that the machine was going to pull him in, so he leaned back. When he pulled away from the machine, his arm tore from his body just above the left elbow. According to Maysey, the centrifuge did not have a light that came on to indicate when the machine had completed both cycles. It also did not have an emergency stop that was accessible.

After the accident, Maysey was flown to the University of Louisville Hospital where he spent more than a month and underwent nine surgeries to re-attach his left arm. Maysey currently has limited use of his left arm and, as he demonstrated to the ALJ, is unable to grip or pick up objects with his fingers. He also has a tingling sensation from his fingertips up to where his arm was detached.

Maysey filed a claim for benefits and a safety violation complaint on May 19, 2017. The ALJ conducted a final hearing on November 21, 2017 and on January 12, 2018 the parties informed the ALJ that they had settled all issues

3

except the alleged safety-violation enhancement. The sole issue before the ALJ was whether Maysey's benefits should be enhanced pursuant to KRS 342.165(1), the safety penalty statute which imposes a 30% enhancement of benefits for accidents caused by the intentional failure of an employer to comply with a statute or regulation relative to installation or maintenance of safety appliances.

Several witnesses provided deposition testimony, including Maysey; Kentucky Occupational Safety and Health Administration (OSHA) inspectors; Magna-Tech's Operations Manager; and Express Services' Safety and Operations Manager. One witness, Charles Morley, is an OSHA safety compliance officer who routinely performs safety inspections throughout the Commonwealth. After the accident Morley conducted a walk-through of the area, interviewed employees, and took photographs. Morley learned that the top that covers the centrifuge was always open during operation, thereby allowing employees, including Maysey, to reach into the centrifuge's point of operation while the machine was still operating. He also learned that the emergency stop on the railing in front of the centrifuge was inoperable.

Employees informed Morley that the centrifuge top was left open because the indicator lights, which notified employees that the centrifuge had completed its cycle, did not always function properly. By leaving the top open employees could visually determine if the centrifuge had stopped spinning. Morley asked that the machine be operated for him and Magna-Tech refused the request.

Morley's investigation included contacting Godfrey and Wing, the manufacturer of the centrifuge. The manufacturer informed him that the centrifuge was not designed to operate unless the top was closed. Additionally, the centrifuge was designed and manufactured such that the top could not be opened unless the centrifuge's two cycles had come to a complete stop. This was specifically done to prevent injury and effectuated by computer software called logic control, which tells the machine when to move and when to stop. Morley was informed by the manufacturer that for the machine to operate with the top open, the computer program would have to be intentionally bypassed.

In the course of his investigation, Morley discovered that Maysey received minimal training with another employee who had only been on the job three months. When he was injured it was his first time operating the hoist on his own and his trainer had to leave him to attend another machine, resulting in Maysey being alone on the catwalk when the accident occurred. Morley learned that other Magna-Tech employees were aware of the centrifuge's malfunctioning and concerned about its safety prior to Maysey's injury, but none of these concerns were reported to Magna-Tech or Express Services. Ultimately, Magna-Tech was cited for two safety violations, violation of the safe workplace provision in KRS 338.031(1)(a) and also the machine guarding provision in 29 Code of Federal Regulations (C.F.R.) § 1910.212(a)(1).

At his deposition Maysey stated that, to his knowledge, only Magna-Tech and Nemak, another manufacturer that conducted its own operations onsite,

5

were aware of the alleged problems with the machines on Line 46.[1]  He did not believe Express Services was made aware of the problem.  He also testified that he never spoke with anyone at Express Services after his first day of work at Magna-Tech.

Mary Card, the Safety and Operations Manager for Express Services, testified by deposition on July 20, 2017.  She had been employed with Express Services since 2012 and became the Safety Coordinator in 2015.  In 2017 she became the Safety and Operations Manager.  Most of her training was on-the-job training and her safety and OSHA training was done online.

Card testified that when Express Services hires an individual for a temporary job it provides safety training in the form of a video.  The video covers proper attire and personal protective equipment to be worn when working around machinery and chemicals.  They also give employees a generic safety assessment test which is not job specific.  She indicated that safety training at Express Services is generic due to the wide variety of client employers with which they contract.  Express Services also asks its employees to notify Express Services of any safety concerns.  According to Card, Maysey did not report any safety concerns prior to the accident.

Based on the testimony, substantial evidence existed that Line 46 presented multiple hazards to Maysey, including lack of adequate guarding on

---

[1] Nemak is another company that engaged in the casting of aluminum automobile parts at the Glasgow facility.  Nemak owned the premises.  Nemak and Magna-Tech maintained a common work area for their employees.

the centrifuge, intentional disabling of safety protocols in the machine's software, problems with the indicator lights, lack of an accessible emergency stop, and insufficient training. Maysey argued that his benefits should be enhanced for the following reasons: (1) Express Services failed to inspect Line 46 prior to his June 6, 2016 injury; (2) Express Services failed to identify the need for point of operation guarding on the centrifuge; (3) Express Services failed to review the safety audit and risk assessment for Line 46 conducted by Magna-Tech's parent corporation, Henkel Corporation, nine months prior to his injury; and (4) Express Services violated KRS 338.031, the safe place to work statute, because it failed to verify that Magna-Tech was free from recognized hazards prior to placing Maysey at the manufacturing facility.

While the ALJ agreed that the evidence supported Maysey's first three arguments, he concluded that Express Services did not have first-hand knowledge of the centrifuge machine, its lack of guarding or the fact that its programming had allegedly been bypassed and posed danger to employees. As noted, Maysey himself testified that he did not believe Express Services knew of any issues with Line 46 prior to his injury.

In denying enhanced benefits, the ALJ concluded that it was not clear that Express Services had the technical expertise to identify the hazards on Line 46 or that it intentionally failed to inspect the premises. The ALJ relied on *Jones v. Aerotek Staffing,* 303 S.W.3d 488 (Ky. App. 2010), which requires the ALJ to find knowledge, approval, direction or acquiescence on the part of the temporary staffing company with regard to the condition that caused the

7

workplace injury in order for enhanced benefits to be awarded. The ALJ found insufficient evidence that Express Services violated KRS 338.031, the general duty statute that requires employers to furnish a safe workplace free from recognized hazards. In the absence of any "intentional failure" by Express Services as required by KRS 342.165(1), the ALJ concluded no enhancement of benefits was authorized.

Maysey appealed to the Workers' Compensation Board, which affirmed the ALJ's Opinion and Order. The Board agreed with the ALJ's determination that Express Services did not intentionally violate the general duty statute, KRS 338.031, as interpreted in a temporary staffing context by the Court of Appeals in *Jones*. While the Board was similarly sympathetic to Maysey, it determined that substantial evidence supported the ALJ's conclusion and no contrary result was compelled.

The Court of Appeals relied on *Ernest Simpson Construction Co. v. Conn,* 625 S.W.2d 850 (Ky. 1981) and *Jones,* 303 S.W.3d at 488, in agreeing with the Board and the ALJ that no statutory penalty can be imposed on Express Services. The Court of Appeals observed that a temporary service agency can generally escape enhanced liability no matter how egregious the safety violation, essentially eviscerating the deterrent purposes of KRS 342.165(1). Noting this "hiatus in the law," *Conn,* 625 S.W.2d at 851, the Court of Appeals reluctantly affirmed the Board.

8

## ANALYSIS

The sole issue before us is whether Express Services is liable for the 30% enhancement of benefits pursuant to KRS 342.165 because of the safety violations of the host employer, Magna-Tech. Maysey's burden on appeal is to "show that the ALJ misapplied the law or that the evidence in [his] favor was so overwhelming that it compelled a favorable finding." *Gray v. Trimmaster,* 173 S.W.3d 236, 241 (Ky. 2005). Because the issue raised by Maysey is an issue of law, we review this matter *de novo. Parker v. Webster Co. Coal, LLC,* 529 S.W.3d 759, 765 (Ky. 2017).

> KRS 342.165(1), the safety penalty statute, states:
>
> If an accident is caused in any degree by the intentional failure of the employer to comply with any specific statute or lawful administrative regulation made thereunder, communicated to the employer and relative to installation or maintenance of safety appliances or methods, the compensation for which the employer would otherwise have been liable under this chapter shall be increased thirty percent (30%) in the amount of each payment . . . .

This Court has held that the purpose of the statute is "to penalize those employers who intentionally fail to comply with safety regulations," *Conn*, 625 S.W.2d at 851, and "to promote workplace safety by encouraging workers and employers to follow safety rules and regulations." *Apex Mining v. Blankenship*, 918 S.W.2d 225, 228 (Ky. 1996).

Maysey argues that the injuries he sustained arose from violations of KRS 338.031 and 29 C.F.R. § 1910.212. KRS 338.031(1)(a), the safe place to work statute, provides that "[e]ach employer . . . [s]hall furnish to each of his employees employment and a place of employment which are free from

9

recognized hazards that are causing or are likely to cause death or serious physical harm to his employees." The cited federal regulation, 29 C.F.R. § 1910.212, requires an employer to provide point of operation guarding for any employee required to enter a limb or any portion of their person into the point of operation of a machine. The Line 46 centrifuge operators at Magna-Tech were required to enter their arm and hand into the point of operation to attach a hook and chain to a large basket of parts, rendering it obvious that the point of operation was unguarded.

As for a temporary staffing company, KRS 342.615(5) states that "[a] temporary help service shall be deemed the employer of a temporary worker and shall be subject to the provisions of this chapter." The parties do not dispute that Express Services, not Magna-Tech, was Maysey's employer. While we agree with Maysey that the legislature did not expressly exempt temporary employers from complying with KRS 338.031 and furnishing a safe place to work, to impose the enhancement penalty under KRS 342.165(1) Maysey was required to prove that Express Services, not Magna-Tech, **intentionally failed** "to comply with [a] specific statute or lawful administrative regulation made thereunder." The intent element is simply not present here.

In analyzing this case, the ALJ, Board and Court of Appeals all relied on *Jones,* 303 S.W.3d at 488, an analogous case authored by then Judge, now Justice, Keller. In that case, Jones was employed by Aerotek Staffing, a temporary employment agency, and was placed at MISA as a laser cutter operator. *Id.* at 489. After being caught in the laser cutter machine, Jones

10

suffered significant injuries to his ribs, chest, lungs, liver, and head. *Id.*

Aerotek paid income and medical benefits to Jones, but when he sought the

statutory enhancement the parties made competing claims that Jones's

injuries were the result of safety violations, i.e., Aerotek claimed Jones's own

conduct contributed to his injuries. *Id.* The ALJ concluded that the safety

violation with respect to the laser cutter was committed by MISA, not Aerotek,

and that no facts existed which would render Aerotek liable for enhanced

benefits. *Id.* at 490.

On appeal, Jones argued that Aerotek was liable for enhanced benefits

because it failed to provide a safe workplace pursuant to KRS 338.031. *Id.* at

491. Given that Aerotek was Jones's employer, the Court of Appeals held that

he was required to show that Aerotek, not MISA, intentionally failed to comply

with a "specific statute or lawful administrative regulation made

thereunder . . . ." *Id.* (quoting KRS 342.165(1)). Jones provided

uncontroverted proof that MISA, as host employer, intentionally violated its

duty to provide a safe workplace but failed to produce any evidence that

Aerotek participated in the safety violations or even knew of them. *Id.* With

these facts, the Court of Appeals concluded that the ALJ and Board correctly

denied Jones's claim for enhanced benefits. *Id.*

The Court of Appeals noted Jones's argument that Aerotek, like any

employer, had a duty to provide a safe workplace. *Id.* But the Court of Appeals

declined to extend the duty of temporary employment agencies as far as Jones

requested:

11

> Taking Jones's argument to its logical conclusion, Aerotek would be required to be familiar with all of the equipment in the facilities where it places employees, all of the federal and state regulations regarding that equipment, and all other federal and state safety regulations related to a particular facility or industry. Furthermore, Aerotek would be required to perform an initial inspection prior to placing employees in a facility and to perform ongoing inspections thereafter to assure itself that no safety violations had occurred or were occurring.

*Id.* The Court of Appeals agreed with the Board that no such duties existed for Aerotek and that "to establish that a temporary employment agency intentionally violated a safety statute or regulation, an employee must show that the agency had knowledge of, approved of, directed, or acquiesced in its client's actions." *Id.* Given the language of KRS 342.165(1), we find this analysis persuasive.

The facts in this case are virtually identical to *Jones.* Like the claimant in *Jones,* Maysey was employed by a temporary employment agency, was placed with a client employer as a machine operator, sustained significant injuries while performing his job duties, alleged that the machine he operated was unsafe, and alleged that safety issues with the machine, which he claimed were known or could have been known by Express Services at the time of his injury, caused or contributed to his injury. Because Express Services was Maysey's employer, Maysey was required to prove that Express Services **intentionally failed** to comply with a relevant safety statute or regulation. After review of the record, we agree with the ALJ, Board and Court of Appeals that Maysey failed to meet this burden.

Several obvious safety violations indisputably existed at the Magna-Tech facility, such as the inoperable indicator light, the lack of an accessible emergency stop and no point of operation guarding. Maysey argues that these obvious hazards should have been recognized by a trained safety and operations employee like Card. But even though Card was employed at Express Services in safety-related roles since 2015, she testified that she received generic safety training and that no one at Express Services has experience or training regarding Magna-Tech machinery. She stated that Express Services relies on the expertise of their clients (the host employers) when it comes to technical issues such as machine operation, repair and maintenance.

Card also testified that the employees of Express Services are encouraged to report to Express Services if they are asked to do anything unsafe. No Express Services employees placed at Magna-Tech had ever reported safety concerns or reported that they were required to operate malfunctioning or unsafe machinery. Further, the record does not reflect that she had the opportunity or occasion to inspect the Magna-Tech facility. She did not know whether an on-site inspection was conducted at Magna-Tech prior to Express Services sending employees there, and the only time she personally went to Magna-Tech was after Maysey was injured.

Card stated that she was not aware that the machine was being operated unsafely with the lid up, that the safety features were bypassed, or whether the indicator light was operative. She had no personal knowledge of the safety

13

training Magna-Tech provides its regular employees and was unaware that employees were required to enter their hands into the point of operation for the impregnation machines. She was never made personally aware by anyone that the machine Maysey was working on was unsafe. According to Card, Express Services has no control over job assignments and duties once an employee reports to work at the host employer. She further testified that she has no personal knowledge or expertise regarding impregnation machines. Card's deposition testimony supports the ALJ's conclusion that Express Services had no knowledge of the relevant unsafe practices at the Magna-Tech facility and did not approve of, direct or acquiesce to any of those unsafe practices. In the absence of that type of intentional conduct on the part of Express Services, the facts simply cannot support an enhanced benefits award under KRS 342.165, a statute that requires "intentional failure of the employer to comply" with safety statutes or regulations.

We note that Maysey identifies a paragraph in the staffing agreement between Express Services and Magna-Tech in which Magna-Tech agreed to provide Express Services associates with a safe, suitable workplace and to comply with applicable state and federal laws. Maysey emphasizes that the agreement also contains an indemnity clause that would render Magna-Tech responsible for any liability Express Services incurred as a result of Magna-Tech's violation of a safety statute or regulation. However, this private contract is immaterial to our consideration of the applicability of KRS 342.165(1). Workers' compensation is "a creature of statute," *Williams v. Eastern Coal*

14

*Corp.*, 952 S.W.2d 696, 698 (Ky. 1997), and the issue before us is purely an issue of statutory construction.

> When interpreting a statute, the Court
>
>> must look first to the plain language of a statute and, if the language is clear, our inquiry ends. We hold fast to the rule of construction that "[t]he plain meaning of the statutory language is presumed to be what the legislature intended, and if the meaning is plain, then the court cannot base its interpretation on any other method or source." In other words, we assume that the Legislature meant exactly what it said, and said exactly what it meant.

*Univ. of Louisville v. Rothstein,* 532 S.W.3d 644, 648 (Ky. 2017) (citations and quotations omitted). Also, we presume that the legislature is aware of the state of the law when it enacts a statute, including the judicial construction of prior enactments. *St. Clair v. Commonwealth,* 140 S.W.3d 510, 570 (Ky. 2004) (citing *Button v. Hikes,* 176 S.W.2d 112, 117 (Ky. 1943)).

The General Assembly enacted the enhancement of benefits provision of KRS 342.165 in 1936 and the Court of Appeals rendered *Jones* in 2010, more than ten years ago.[2] Presumably, the legislature knows how the judiciary has interpreted the benefit enhancement statute with regard to employees of temporary staffing companies injured in workplace accidents involving safety violations. The legislature has not amended KRS 342.165 and this Court cannot rewrite the statute to extend its application to temporary staffing employers, who have little to no control over the workplace where the injury

---

[2] The original 1936 statute contained a 15% enhancement of benefits for an employer's failure to comply with a specific statute or regulation relative to maintenance of safety appliances or methods. In 2000 the statute was amended to provide for a 30% enhancement of benefits.

15

occurred. In order for temporary staffing employees to recover enhanced benefits due to safety violations committed by host employers (absent the knowing and intentional conduct discussed in *Jones*), the statute would have to be rewritten. For now, the plain language of KRS 342.165 does not allow for the result that Maysey understandably seeks.

We acknowledge Maysey's evidence that on March 25, 2016, approximately nine weeks prior to his employment with Express Services, Henkel Corporation, the parent corporation of Magna-Tech, performed an inspection of Line 46. This inspection identified the need for point of operation guarding for the Line 46 centrifuge. The audit team requested that Henkel approve the guarding but this request was neither approved nor implemented prior to Maysey's injury. While this information certainly suggests that Magna-Tech committed blatant safety violations, these violations cannot be imputed to Express Services who merely supplied temporary employees and had no control over Magna-Tech's facility and machinery or knowledge of the violations.

In sum, extending liability for the safety violations at the Magna-Tech facility to Express Services pursuant to the "intentional failure" standard in KRS 342.165(1) is contrary to the current statute and our caselaw. This result is harsh, especially given the severity of Maysey's injury and the egregious nature of the safety violations, but the harshness is potentially mitigated in this particular case by Maysey's pending litigation in the United States District Court for the Western District of Kentucky. In that case, Maysey is pursuing claims of negligence and strict liability, as well as seeking punitive damages,

16

against Henkel, Magna-Tech's parent corporation, and Nemak, the owner of the premises where he was injured.[3]  As for Maysey's entitlement to statutory workers' compensation benefits from Express Services, the ALJ ruled correctly in denying the KRS 342.165(1) enhancement.

## CONCLUSION

For the reasons stated above, the ALJ did not err in concluding that Express Services was not liable to Maysey for an enhanced safety-violation benefit pursuant to KRS 342.165(1).  Therefore, we affirm the Court of Appeals' opinion which affirmed the Board's opinion upholding the ALJ's opinion and order.

All sitting.  All concur.

---

[3] Maysey filed suit against Henkel Corporation, Henkel AG & Co. KGAA, and Nemak USA, Inc.  Henkel AG & Co. KGAA is a German company that conducts business in the United States through its subsidiary, the Henkel Corporation.  In December 2015 the Henkel Corporation acquired Magna-Tech Manufacturing, LLC, which operates the Magna-Tech facility in Glasgow, Kentucky where Maysey was injured.  As noted, Nemak USA, Inc. also engaged in the casting of aluminum automobile parts at the Glasgow facility and both Nemak and Henkel Corporation maintained a common work area for their employees.  Express Services and Magna-Tech were originally parties to the federal litigation but have been dismissed by the federal district court.

COUNSEL FOR APPELLANT:

Thomas W. Davis
Thomas W. Davis, P.S.C.

COUNSEL FOR APPELLEE,
EXPRESS SERVICES, INC.:

Henry C A List, Jr.
Pohl & Aubrey, P.S.C.

ADMINISTRATIVE LAW JUDGE:

W. Greg Harvey

WORKERS' COMPENSATION BOARD:

Michael Wayne Alvey, Chairman

COUNSEL FOR AMICUS CURIAE,
KENTUCKY WORKERS' ASSOCIATION:

Amanda Michelle Perkins
Gilbert Law Group PLLC